1   MARK P. WINE (STATE BAR NO. 189897)
    mwine@orrick.com
2   MICHAEL C. CHOW (STATE BAR NO. 273912)
    mchow@orrick.com
3   JAMES MAUNE (STATE BAR NO. 293923)
    jmaune@orrick.com
4   ORRICK, HERRINGTON & SUTCLIFFE LLP
    2050 Main Street, Suite 1100
5   Irvine, CA  92614-8255
    Telephone:  +1 949 567 6700
6   Facsimile:   +1 949 567 6710

7   DIANA M. RUTOWSKI (STATE BAR NO. 233878)
    drutowski@orrick.com
8   SCOTT LONARDO (STATE BAR NO. 285001)
    slonardo@orrick.com
9   ORRICK, HERRINGTON & SUTCLIFFE LLP
    1000 Marsh Road
10  Menlo Park, CA  94025
    Telephone:  +1 650 614 7400
11  Facsimile:   +1 650 614 7401

12  *Attorney list continued on next page*

13  Attorneys for Plaintiff
    SCAT ENTERPRISES, INC.
14

15              UNITED STATES DISTRICT COURT

16              CENTRAL DISTRICT OF CALIFORNIA

17                   WESTERN DIVISION

| 18  SCAT ENTERPRISES, INC., a California corporation, | Case No. 2:14-CV-07995-R-AFM |
|---|---|
| 19 |  |
| Plaintiff, | **SCAT ENTERPRISES, INC.'S OPPOSITION TO FCA US LLC'S MOTION IN LIMINE FOR AN ORDER PRECLUDING SCAT FROM PRESENTING EVIDENCE OF ACTUAL CONFUSION** |
| 20 |  |
| v. |  |
| 21 |  |
| FCA US LLC, a Delaware Limited Liability Company, |  |
| 22 |  |
| Defendant. | Date:          April 3, 2017 |
| 23 |  Time:         10:00 a.m. |
|  | Dept.:         Courtroom 880 |
| 24 | Judge:        Hon. Manuel L. Real |
| 25 |  |
| AND RELATED COUNTERCLAIMS. |  |
| 26 |  |

27

28

1  EILEEN Z. AGHNAMI (STATE BAR NO. 285117)
   eaghnami@orrick.com
2  WILL MELEHANI (SBN 285916)
   wmelehani@orrick.com
3  ORRICK, HERRINGTON & SUTCLIFFE LLP
   The Orrick Building
4  405 Howard Street
   San Francisco, California  94105-2669
5  Telephone:   +1-415-773-5577
   Facsimile:   +1-415-773-5759
6

7  Attorneys for Plaintiff
   SCAT ENTERPRISES, INC.
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CASE NO. 2:14-CV-07995-R-AFM

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION .................................................................... 1

II.     STATEMENT OF FACTS ...................................................... 2

    A.      FCA's Infringement of Scat's Trademark Rights ................ 2

    B.      FCA's Infringement Causes Actual Confusion .................. 3

III.    ARGUMENT .......................................................................... 4

    A.      FCA's Motion in Limine in Procedurally Improper ........... 4

    B.      FCA's Unsupported and Inflammatory Allegations of Bad Faith Are Both False and Irrelevant. ................................ 6

    C.      Scat's Evidence of Actual Confusion is Not "De Minimis." ............... 7

    D.      Each of FCA's Specific Exclusion Arguments is Meritless. ............... 9

        1.      The Testimony of Jerid Suchy is Admissible. ........................ 11

        2.      Bill Middaugh's Statement is Admissible. .............................. 14

        3.      Eddie Solt's Statement is Admissible ...................................... 15

        4.      Mr. Lieb Can Testify about the Australian Visitor. ................ 18

        5.      Paul Bosserman's Statements are Admissible. ........................ 19

        6.      Brian McCullough's Testimony is Admissible. ....................... 20

        7.      Lauren Maiman's Testimony on Confusion is Admissible. ...... 22

        8.      Mr. Lieb Can Testify About Clay Smith's Statement. ............. 23

        9.      Skateborda22@gmail.com's Question is Admissible. ............. 23

        10.     The Dodge Blog Commenter's Question is Admissible .......... 25

IV.     CONCLUSION ...................................................................... 25

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

4

**Cases**

5

*Acad. of Motion Picture Arts & Scis. v. Creative House Promotions, Inc.,*
    944 F.2d 1446 (9th Cir. 1991) ................................................................. 3

6

7

*AMF, Inc. v. Sleekcraft Boats,*
    599 F.2d 341 (9th Cir. 1979) ............................................ 12, 21, 23, 25

8

9

*Athleta, Inc. v. Pitbull Clothing Co.,*
    No. CV 12-10499-CAS, 2013 U.S. Dist. LEXIS 6867 (C.D. Cal. Jan. 7, 2013) ......................................................................... 7, 17, 19

10

11

*Blue Bell Creameries, L.P. v. Denali Co., LLC,*
    No. H-08-0981, 2008 U.S. Dist. LEXIS 58083 (S.D. Tex. July 31, 2008) ................................................................................... 24

12

13

*Burch v. Regents of the Univ. of Cal.,*
    433 F. Supp. 2d 1110 (E.D. Cal. 2006) ................................................ 5

14

15

*Conversive, Inc. v. Conversagent, Inc.,*
    433 F. Supp. 2d 1079 (C.D. Cal. 2006) ....................................... *passim*

16

17

*Covertech Fabricating, Inc. v. TVM Bldg. Prods.,*
    124 F. Supp. 3d 489 (W.D. Pa. 2015) .................................................. 8

18

19

*Cudjo v. Ayers,*
    698 F.3d 752 (9th Cir. 2012) ............................................................. 10

20

*E. & J. Gallo Winery v. Gallo Nero,*
    782 F. Supp. 457 (N.D. Cal. 1991) ...................................................... 6

21

22

*Entrepreneur Media v. Smith,*
    279 F.3d 1135 (9th Cir. 2002) .......................................................... 8, 9

23

24

*Esquivel v. Vistar Corp.,*
    No. 2:11-cv-07284-JHN-PJWx, 2012 U.S. Dist. LEXIS 26686 (C.D. Cal. Feb. 8, 2012) ...................................................................... 6

25

26

27

28

CASE NO. 2:14-CV-07995-R-AFM

OHSUSA:766531683.6

*Fleischmann Distilling Corp. v. Maier Brewing Co.*,
   314 F.2d 149 (9th Cir. 1963) ........................................................................ 12

*Haddock v. Countrywide Bank, NA*,
   No. CV 14-6452 PSG, 2015 U.S. Dist. LEXIS 146291 (C.D. Cal.
   Oct. 27, 2015) ................................................................................................ 6

*James Burrough Ltd. v. Sign of Beefeater, Inc.*,
   540 F.2d 266 (7th Cir. 1976) ........................................................................ 4

*JIPC Mgmt. v. Incredible Pizza Co.*,
   2009 U.S. Dist. LEXIS 133019 (C.D. Cal. July 14, 2009) .................... 20, 23

*JL Bev. Co., LLC v. Jim Beam Brands Co.*,
   828 F.3d 1098 (9th Cir. 2016) ..................................................................... 19

*Johnson v. Hedgpeth*,
   No. ED CV 09-1577-GW (CT), 2010 U.S. Dist. LEXIS 43403
   (C.D. Cal. Feb. 25, 2010) ............................................................................ 18

*In re Katz Interactive Call Processing Patent Litig.*,
   No. 07-ML-01816-C-RGK, 2009 U.S. Dist. LEXIS 132093 (C.D.
   Cal. Aug. 3, 2009) ........................................................................................ 17

*Kreation Juicery, Inc. v. Shekarchi*,
   No. CV 14-658 DMG, 2014 U.S. Dist. LEXIS 180710 (C.D. Cal.
   Sep. 17, 2014) ..................................................................................... 9, 24, 25

*La. World Exposition, Inc. v. Logue*,
   746 F.2d 1033 (5th Cir. 1984) ....................................................................... 8

*Lahoti v. Vericheck, Inc.*,
   636 F.3d 501 (9th Cir. 2011) .................................................................*passim*

*Messick v. Horizon Indus.*,
   62 F.3d 1227 (9th Cir. 1995) ....................................................................... 16

*Montoya v. Orange Cty. Sheriff's Dep't*,
   987 F. Supp. 2d 981 (C.D. Cal. 2013) ......................................................... 5

*Mustang Motels, Inc. v. Patel*,
   1985 U.S. Dist. LEXIS 22162, 1985 WL 72659 (C.D. Cal. Mar. 1,
   1985) ............................................................................................................ 10

- 2 -

OHSUSA:766531683.6

*Nordstrom, Inc. v. Nomorerack Retail Grp., Inc.*,
No. C12-1853-RSM, 2013 U.S. Dist. LEXIS 41810 (W.D. Wash. Mar. 25, 2013) ................................................................................24

*Nutri/Sys., Inc. v. Con-Stan Indus.*,
809 F.2d 601 (9th Cir. 1987) ...................................................................8

*Pebble Beach Co. v. Tour 18 I, Ltd.*,
942 F. Supp. 1513 (S.D. Tex. 1996), *aff'd as modified*, 155 F.3d 526 (5th Cir. 1998) ........................................................................8

*ProCentury Ins. Co. v. Cuk*,
No. SACV 13-311-JLS, 2014 U.S. Dist. LEXIS 186938 (C.D. Cal. Apr. 29, 2014)..........................................................................5

*QVC Inc. v. Your Vitamins Inc.*,
439 F. App'x 165 (3d Cir. 2011)................................................24

*Rearden LLC v. Rearden Commerce, Inc.*,
683 F.3d 1190 (9th Cir. 2012) ...................................................*passim*

*Ross v. Ortiz*,
No. EDCV 10-1606-SJO (JPR), 2013 U.S. Dist. LEXIS 106060 (C.D. Cal. May 17, 2013) ......................................................4

*Sanders v. Edge Holdings*,
2012 U.S. Dist. LEXIS 183204 (S.D. Cal. Dec. 28, 2012) ........................20, 23

*Shapiro v. Abraham Lincoln Univ. Sch. of Law*,
No. CV 10-03177-JGB, 2013 U.S. Dist. LEXIS 115783 (C.D. Cal. Aug. 12, 2013) ......................................................4

*Smith Fiberglass Prods. v. Ameron, Inc.*,
7 F.3d 1327 (7th Cir. 1993) ...................................................12

*Therma-Scan, Inc. v. Thermoscan, Inc.*,
295 F.3d 623636 (6th Cir. 2002) ...................................................24

*United States v. Evans*,
728 F.3d 953 (9th Cir. 2013) ...................................................*passim*

**Other Authorities**

Fed. R. Civ. P. 37(c)(1) ...................................................23

Fed. R. Civ. P. 56(c) ................................................................................... 4

Fed. R. Evid. 403 ...................................................................................... 12

Fed. R. Evid. 602 ...................................................................................... 11

Fed. R. Evid. 802 ...................................................................................... 20

Fed. R. Evid. 803 ...................................................................................... 15

Fed. R. Evid. 803(3) ........................................................................... *passim*

Fed. R. Evid. 803(6) .................................................................................. 13

L.R. 11-6 ...................................................................................................... 5

Ninth Circuit Rule 36-3(c) ......................................................................... 8

Case No. 2:14-CV-07995-R-AFM

OHSUSA:766531683.6

## I.   INTRODUCTION

FCA US LLC ("FCA")'s motion in limine is procedurally improper and legally meritless.  FCA styles its brief as a motion in limine, but much of it argues that Scat Enterprises, Inc. ("Scat")'s evidence of actual confusion is immaterial, an issue for summary judgment.  Worse, FCA dodges the Local Rule page limits by expressly incorporating its motion in limine into its cursory discussion of the actual confusion factor in its summary judgment brief.  If FCA wished to preclude Scat from relying on allegedly inadmissible evidence at the summary judgment stage, it should have followed the procedure set out in the Federal Rules of Civil Procedure for objecting to evidence offered in opposition to summary judgment.  FCA's decision to file a premature motion in limine as a supplemental summary judgment brief, when no trial has even been scheduled, warrants this motion's denial.

The arguments FCA presents in its motion are similarly defective.  FCA first seeks to exclude all of Scat's confusion evidence because it is supposedly "de minimis."  However, Scat has substantially more evidence of actual confusion than plaintiffs in other reported cases where courts have found actual confusion.  Moreover, the quantity of Scat's confusion evidence relates to persuasiveness, not admissibility.  It is plainly not appropriate to exclude such evidence from consideration by the Court in connection with the pending motion for summary judgment.

FCA also challenges Scat's evidence piecemeal by repeating the same incorrect arguments for each piece of actual confusion evidence.  As with its other arguments, these points are contradicted by Ninth Circuit law:

**Non-Consumer confusion:**  FCA incorrectly argues that Scat's evidence is immaterial because the confused person was not an actual customer suffering from confusion in connection with a purchasing decision.  This is wrong.  The Ninth Circuit held non-consumer confusion is still relevant to the issue of actual

confusion.

**Credibility and Bias:** FCA also suggests Scat's evidence should be excluded on credibility or bias grounds. As the Ninth Circuit and numerous other courts have made clear, these are issues of weight, not admissibility.

**Hearsay:** FCA's attempts to exclude statements expressing confusion as hearsay are also wrong. The Ninth Circuit has confirmed, statements expressing confusion are admissible to show the declarant's state of mind.

FCA's motion does not provide any valid reason for excluding any of Scat's actual confusion evidence, and should therefore be denied.

## II.   STATEMENT OF FACTS

### A.   FCA's Infringement of Scat's Trademark Rights

Scat has continuously used the SCAT and SCAT-formative marks for automotive performance parts and accessories since its founding in 1962 through the present. *See* Dkt. 112-1 (MP&A) at 3-7; Declaration of Philip Thomas Lieb ("Lieb. Decl.") ¶¶ 3-5. Scat's founder, Phillip Thomas Lieb, grew the business into one of the most respected and innovative automotive aftermarket suppliers. *Id.*

FCA used SCAT PACK as a marketing term for a line of Dodge muscle cars as well as on kits called "Scat Packages" containing aftermarket performance enhancing parts for its vehicles, in the late '60s and early '70s, but discontinued selling SCAT PACK cars in 1971. Dkt. 107 ¶¶ 25, 30. In 2013, however, FCA decided to revive the long-abandoned SCAT PACK brand after 45 years of hibernation. But when FCA attempted to register SCAT PACK as a mark, the USPTO rejected it, finding a likelihood of confusion with Scat's registered marks. *See* Declaration of James Maune ("Maune Decl."), Exs. A & B. FCA disregarded Scat's rights and nonetheless proceeded to relaunch the use of its SCAT PACK brand in November, 2013.

## B.   FCA's Infringement Causes Actual Confusion

Since FCA's infringement that is the subject of this litigation resumed in late 2013, Scat has become aware of several instances of actual confusion.  These instances include several incidents involving potential customers or automotive industry insiders expressing confusion regarding Scat's role or affiliation with FCA's Scat Pack products.  Scat's actual confusion evidence includes:

1. Confusion expressed by a couple at the Edelbrock Show to Mr. Suchy;
2. Confusion express by Bill Middaugh, advertising salesperson and representative of Beckett Media at SEMA 2013 show, regarding Scat and FCA's relationship;
3. Confusion expressed by Eddie Solt during a job interview at Scat;
4. Confusion from an Australian visitor to the Pomona Swap Meet in March 2016;
5. Confusion expressed by a woman named Jennifer to Paul Bosserman;
6. Confusion expressed by employees of a tint shop to Mr. Bosserman;
7. Confusion expressed by a man at the 2016 Edelbrock Show on May 14, 2016 and requesting a SCAT decal because he had a "Scat Pack;"
8. Confusion expressed by Clay Smith of Speedway Motors;
9. Confusion expressed by Lauren Maiman and Jon Kunzman, of Midnight Oil PR and ARC, respectively;
10. Confusion reflected in an email received by Scat;
11. Confusion reflected in a blog post on a Dodge blog website.

Further, FCA's own survey expert, Dr. Butler, provided evidence of actual confusion in the form of a survey showing that consumers falsely associate the SCAT mark with FCA, Dodge, or "SCAT PACK."  Declaration of James Maune ("Maune Decl."), Ex. C.  Dr. Butler asked respondents to identify the product or company that they "associated" with the name SCAT.  A total of 13.2% of respondents said "Scat Pack" or "Dodge."  *Id.* ¶ 36.  This finding alone demonstrates the existence of actual confusion.  *See Acad. of Motion Picture Arts & Scis. v. Creative House Promotions, Inc.*, 944 F.2d 1446, 1456 (9th Cir. 1991) (explaining that "[l]ikelihood of confusion will be found whenever consumers are likely to assume that a mark is associated with another source or sponsor because of the similarities between the two marks") (emphasis added); *see also* McCarthy on Trademarks and Unfair Competition § 32:188 (4th ed.) (hereinafter "McCarthy")

CASE NO. 2:14-CV-07995-R-AFM

("Where other evidence is supportive, courts have found a likelihood of confusion when survey results are between 10% and 20%."); *James Burrough Ltd. v. Sign of Beefeater, Inc.,* 540 F.2d 266, 279 (7th Cir. 1976) (finding that 15% evidences a likelihood of confusion).  Further, as will been explained by Scat's survey rebuttal expert, Dr. Jonathan Hibbard, Dr. Butler's survey is flawed and, if it had been properly conducted, would have conservatively revealed a confusion level of 17.2%.  Maune Decl., Ex. D ¶ 40.  This evidence, which is not challenged here, provides further support for Scat's case of actual confusion.

## III.   ARGUMENT

### A.   FCA's Motion in Limine in Procedurally Improper

FCA's motion in limine as a preemptive strike against Scat's potentially summary judgment evidence is improper.  The Federal Rules of Civil Procedure explain how summary judgment evidence disputes are to be handled—the challenging party may file an objection.  *See* Fed. R. Civ. P. 56(c).  This procedure has been applied in this district numerous times without the need for premature, co-pending, overlapping motions in limine.[1]  FCA should have filed an objection rather than prematurely moving against evidence Scat had not yet introduced.

The true reason that FCA brings this motion in limine is as a procedurally improper supplement to its Motion for Partially Summary Judgment.  Dkt. No. 103.[2] Here, FCA incorrectly argues that each piece of actual confusion evidence is not *admissible* on summary judgment because it does not want it considered as

---

[1] *See, e.g.*, *Ross v. Ortiz*, No. EDCV 10-1606-SJO (JPR), 2013 U.S. Dist. LEXIS 106060, at *7-9 (C.D. Cal. May 17, 2013) (considering separately filed objections to summary judgment evidence); *Shapiro v. Abraham Lincoln Univ. Sch. of Law*, No. CV 10-03177-JGB (FMOx), 2013 U.S. Dist. LEXIS 115783, at *10-11 (C.D. Cal. Aug. 12, 2013) (same).

[2] To the extent FCA suggests this motion pertains to evidence for trial, its motion is extremely premature.  The issues to be presented to the jury are not yet set. This case does not have a trial date, and there is no reason why FCA should bring this motion now rather than at a more appropriate time in the ordinary course when the issues to be tried are properly framed for resolution.

CASE NO. 2:14-CV-07995-R-AFM

OHSUSA:766531683.6

relevant evidence of actual confusion, knowing that such evidence will defeat its motion.  However, this determination is inherently part the *summary judgment* standard.  *See Burch v. Regents of the Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006) (explaining that considering *material* facts necessarily requires consideration of the fact's relevance); *Montoya v. Orange Cty. Sheriff's Dep't*, 987 F. Supp. 2d 981, 994 (C.D. Cal. 2013) (refusing to consider relevance and unfair prejudice objections at the summary judgment stage); *ProCentury Ins. Co. v. Cuk*, No. SACV 13-311-JLS (JPRx), 2014 U.S. Dist. LEXIS 186938, at *9 (C.D. Cal. Apr. 29, 2014) (explaining that "The Court's substantive analysis of the [summary judgment motion]… necessarily resolves [relevance] objections.").  FCA's relevance arguments are improperly disguised summary judgment arguments.

FCA's conduct also reveals that much of this motion in limine is designed to address summary judgment issues.  First, as explained below, FCA's brief fails to cite any order or opinion excluding evidence on relevance grounds, instead relying mainly on summary judgment and injunctive relief decisions that merely remark on a piece of evidence's weight of credibility.  Second, FCA has scheduled these two motions to be heard simultaneously, undoubtedly with the hope that the summary judgment issues presented here can be considered in conjunction with the issues presented in its motion for summary judgment.

Third, FCA *expressly incorporates* this motion by reference into its summary judgment motion.  *See* Dkt. No. 103, at 23, n. 25.  In addition to demonstrating FCA's intent to argue summary judgment issues here, this is also improper because it is an end-run around this district's page limits.  L.R. 11-6 (limiting briefs to 25 pages).  FCA's reason for this tactic is obvious, as a glance at both motions reveals that FCA utilized every line of its 25-page limit, even with its inconsistent method of footnote citation.  *See* Mot at 25, Dkt. No. 103 at 25.  Such an attempt to disregard the Court's page limits is reason enough to disregard this motion.

CASE NO. 2:14-CV-07995-R-AFM

OHSUSA:766531683.6

*Haddock v. Countrywide Bank, NA*, No. CV 14-6452 PSG (FFMx), 2015 U.S. Dist. LEXIS 146291, at *18 n.6 (C.D. Cal. Oct. 27, 2015) (declining to consider material violating page limits); *Esquivel v. Vistar Corp.*, No. 2:11-cv-07284-JHN-PJWx, 2012 U.S. Dist. LEXIS 26686, at *3 n.1 (C.D. Cal. Feb. 8, 2012) (stating that improperly splitting of one motion was an improper violation of page limits).

### B.   FCA's Unsupported and Inflammatory Allegations of Bad Faith Are Both False and Irrelevant.

FCA dedicates over 3 pages of its tightly-packed brief to unsupported and inflammatory allegations that Scat engaged in a bad faith scheme to manufacture actual confusion by selling its own SCAT packs.  This is simply not true.

Contrary to FCA's assertions, Scat has previously marketed its aftermarket performance parts in "packs" or "packages."  Lieb Decl., Ex. A ("Scat Superpack"), *id.,* Ex. B ("Scat Super-Pak").  FCA's infringement is no reason why it should be prevented from continuing to do so.  *See E. & J. Gallo Winery v. Gallo Nero*, 782 F. Supp. 457, 463 (N.D. Cal. 1991) (finding an infringing mark was similar, despite the inclusion of other terms, because the senior user's mark was often seen with descriptive terms).  As the registered owner of the SCAT marks, Scat is well within its rights to attach a descriptive term like "pack" to its mark, a term businesses often use when selling bundles of goods.[3]  *See* McCarthy § 11:45 ("The policies of free competition and free use of language dictate that trademark law cannot forbid the commercial use of terms in their descriptive sense.").  Indeed, FCA's flawed argument that Scat's use of its own mark should be cabined because of FCA's later, infringing use is precisely the harm that reverse confusion trademark cases seek to remedy.  *See* J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 23:10 (4th ed.) (in a reverse confusion context, "the senior user loses

---

[3] *See, e.g.,* Maune Decl., Ex E (T shirt 10 pack); Ex. F (automotive paint buffer pack); Ex. G (earphone combo pack); Ex. H (potato chips variety pack); Ex I (snack variety pack).

OHSUSA:766531683.6

1  the value of the trademark, its product identity, corporate identity, control over its

2  goodwill and reputation, and ability to move into new markets").

3      In addition to being false,[4] these accusations are also irrelevant.  There is no

4  evidence that Scat's use of the word "packs" ever caused any actual confusion.

5  <u>FCA agrees</u>.  *See* Dkt. No. 103 at 4, n.3 (setting forth allegations of Scat's use of

6  the word "packs" but admitting that "no actual confusion resulted").  And there is

7  certainly no evidence that these sales influenced or caused any of the actual

8  confusion at issue in FCA's motion.  *See Athleta, Inc. v. Pitbull Clothing Co.*, No.

9  CV 12-10499-CAS (FMOx), 2013 U.S. Dist. LEXIS 6867, at *27-29 (C.D. Cal.

10  Jan. 7, 2013) (rejecting defendant's attempt to blame plaintiff's conduct for actual

11  confusion when there was no evidence that plaintiff's conduct had an effect on

12  plaintiff's evidence of actual confusion).[5]  FCA's own infringing conduct has

13  caused enough confusion, and FCA's false accusations are merely an attempt to

14  disparage Scat before the Court.  They should not be considered.

15      **C.    Scat's Evidence of Actual Confusion is Not "De Minimis."**

16      FCA's claim that Scat's evidence should be excluded because it is

17  supposedly "de minimis" is wrong for several reasons.  Whether Scat's actual

18  confusion evidence is "de minimis" concerns the evidence's weight, not its

19  admissibility.  As the Ninth Circuit has explained, if evidence is "de minimis," it

20

---

21  [4] FCA's allegations of bad faith are unsupported.  A look at the facts underlying
22  FCA's creative storytelling reveals no evidence of bad faith.  FCA discusses several
    advertisements for Scat's packs, but merely speculates that they were motivated by
23  this lawsuit, going so far as to try to infer intent from Scat's use of certain
    marketing channels to target particular car owners and the placement of particular
    *graphics* within it advertisements.  *See* Lieb Decl. ¶ 4.

24  [5] FCA's accusation of manufacturing confusion based on an email sent by Mr. Lieb
25  to Mr. Gary Boerman is also meritless.  This email was a joke between old friends,
    sent in response to a joke email sent by Mr. Boerman.  The only thing this email
26  evidences is Mr. Lieb's self-deprecating sense of humor regarding his legal
    situation, and it provides no indication of bad faith.  More importantly, there is no
27  evidence that Mr. Boerman acted on Mr. Lieb's sarcastic offer.  Lieb Decl. ¶¶ 11-
    15.

28

simply means that "a reasonable juror could find" that evidence to be "unpersuasive." *Entrepreneur Media v. Smith*, 279 F.3d 1135, 1150 (9th Cir. 2002). FCA has not identified any case that held actual confusion evidence was inadmissible because it was allegedly "de minimis." Indeed, the courts in FCA's cited cases merely found evidence to be unpersuasive. Specifically, in *Nutrisystems*, the Ninth Circuit did not address any issues of admissibility, and merely affirmed a judge's factual finding that un-excluded evidence of actual confusion did not weigh in favor of a finding of likelihood of confusion. *Nutri/Sys., Inc. v. Con-Stan Indus.*, 809 F.2d 601, 607 (9th Cir. 1987). Likewise in *Visa Int'l Serv. Ass'n v. E. Fin. Fed. Credit Union*, the court merely found evidence to be "insufficient," not inadmissible. No. 92-55038, 1992 U.S. App. LEXIS 14965, at *13 (9th Cir. June 19, 1992) (non-precedential).[6]

    Further, Scat is not offering "de minimis" evidence of actual confusion. The eleven instances of actual confusion cited by Scat are not "de minimis" but show a pervasive issue of ongoing confusion resulting from FCA's infringement. This evidence is particularly significant in light of Scat's relatively smaller business and the fact that Chrysler's "Scat Pack" products had only been available for about three years. Courts have found "persuasive evidence" of actual confusion based on much less. *Pebble Beach Co. v. Tour 18 I, Ltd.*, 942 F. Supp. 1513, 1548 (S.D. Tex. 1996), ("The mistaken assumptions by four witnesses constitutes persuasive evidence of actual confusion") *aff'd as modified*, 155 F.3d 526 (5th Cir. 1998).[7]

---

[6] FCA's brief fails to indicate to the Court that this is case unpublished and thus not precedential. Ninth Circuit Rule 36-3(c). Citation to this decision in courts within the Ninth Circuit is prohibited in the by Ninth Circuit Rule 36-3(c).

[7] *See also Entrepreneur Media*, 279 F.3d at 1151 (explaining that the trier-of-fact could find six instances of actual confusion to be "quite significant"); *La. World Exposition, Inc. v. Logue*, 746 F.2d 1033, 1041 (5th Cir. 1984) (affirming a finding of actual confusion based on a single instance of actual confusion); *Covertech Fabricating, Inc. v. TVM Bldg. Prods.*, 124 F. Supp. 3d 489, 535 (W.D. Pa. 2015) (finding that two instances of actual confusion constituted "sufficient evidence of actual confusion").

And FCA's own survey expert's results demonstrate these are not isolated instances.  *See supra* Section II.B.

Nor is Scat's decision not to conduct a survey relevant to the admissibility of its evidence of actual confusion.  The Ninth Circuit has never held that the absence of survey evidence suggested no actual confusion, let alone barred its admissibility. Many courts find actual confusion without surveys.[8]  *See Entrepreneur Media*, 279 F.3d at 1153 (finding the actual confusion factor weighed in favor of the plaintiff without mentioning the absence of survey evidence); *see also Kreation Juicery, Inc. v. Shekarchi*, No. CV 14-658 DMG (ASx), 2014 U.S. Dist. LEXIS 180710, at *19-20 n.4 (C.D. Cal. Sep. 17, 2014) (finding actual confusion and dismissing the absence of survey evidence is irrelevant).

### D.     Each of FCA's Specific Exclusion Arguments is Meritless.

FCA's arguments for each instance of actual confusion are legally meritless.

**Non-Consumer Confusion:**  For several of these instances of confusion, FCA wrongly claims that the confusion is not actionable because it was not experienced by a customer in conjunction with a purchasing decision.  These objections, which essentially allege irrelevance, are summary judgment issues that are improper to raise here.  *See supra* Section III.A.

This position is also wrong.  The Ninth Circuit recognizes that non-consumer confusion can be probative of actual confusion.  *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1213 (9th Cir. 2012) (finding that the district court erred by failing to consider "non-consumer" confusion in its analysis).  Specifically, evidence that non-consumers suffered actual confusion is relevant if the non-consumers are nonetheless potential consumers or their confusion may give rise to

---

[8] FCA suggests Scat's "financial resources" required it to conduct a survey.  Unlike FCA, Scat is a smaller company attempting to litigate this case conservatively while FCA takes repeated measures to drive up the cost of litigation.  For example, FCA served seven affirmative expert reports in this relatively simple trademark case.  Maune Decl. ¶ 33.

CASE NO. 2:14-CV-07995-R-AFM

1    an inference that potential consumers would likewise be confused.  *Id*. at 1215-

2    1216 (explaining that "it is well established that confusion on the part of potential

3    consumers may be relevant").  Further, non-consumer confusion is relevant when it

4    "could influence consumer perceptions and decision-making."  *Id*.  As explained

5    below, all of Scat's confusion evidence involves people within these categories.

6         **Credibility and Bias:**  FCA also argues that many of these instances of

7    confusion are inadmissible because FCA has doubts regarding the credibility of

8    Scat's witnesses or declarants.  FCA cites no evidentiary rule for excluding

9    evidence on this basis, and there is none.  "The court may not exclude relevant

10   evidence—or, in this case, assign it no probative value—on the ground that it does

11   not find the evidence to be credible."  *United States v. Evans*, 728 F.3d 953, 963

12   (9th Cir. 2013).  Instead, FCA repeatedly attempts to mislead this court with

13   decisions involving judges commenting on the credibility or persuasiveness of

14   evidence in a fact-finding posture, which FCA then characterizes as a basis for the

15   exclusion of evidence.  Such alleged credibility issues can be addressed through

16   cross examination and do not justify excluding evidence.  *See Cudjo v. Ayers*, 698

17   F.3d 752, 759 (9th Cir. 2012) (reversing a district court's exclusion of evidence

18   based on credibility concerns).

19        **Hearsay:** FCA's various hearsay arguments are also are incorrect.  The

20   statements of people expressing actual confusion is not hearsay because the

21   statements are not being offered to prove that their confused statement was

22   factually true.  *Mustang Motels, Inc. v. Patel*, 1985 U.S. Dist. LEXIS 22162, 1985

23   WL 72659 (C.D. Cal. Mar. 1, 1985) ("If the significance of an offered statement

24   lies solely in the fact that it was made, no issue is raised as to the truth of the matter

25   asserted, and the statement is not hearsay.")  All of Scat's confusion evidence is

26   offered to show the state of mind of the declarants, *i.e.*, their confusion, and they

27   are thus admissible under Fᴇᴅ. R. Eᴠɪᴅ. 803(3).  *See Lahoti v. Vericheck, Inc.*, 636

28

- 10 -

F.3d 501, 509 (9th Cir. 2011) (ruling that customer confusion evidence was admissible to prove state of mind); *Conversive, Inc. v. Conversagent, Inc.*, 433 F. Supp. 2d 1079, 1092 (C.D. Cal. 2006) (ruling that statements expressing actual confusion were not inadmissible because they were not offered to prove assertion but to prove confused state of mind).[9]

### 1.    The Testimony of Jerid Suchy is Admissible.

Scat's former employee Jerid Suchy testified that he encountered a couple at the Edelbrock car show who had explained to him that they were familiar with Scat's products and had been using Scat's products for years and because they owned a Scat Pack Challenger.  Bost Decl., Exhibit M; Suchy Depo. Tr. at 89:10-22.[10]  There is no basis for excluding this actual confusion evidence.

FCA first incorrectly claims that this statement is nonsensical and does not express any actual confusion.  But FCA fails to mention that Mr. Suchy testified that the woman in the couple stated "We're very familiar with your products.  I just bought a new Scat Pack Challenger." *Id.* at 92:16-22 (emphasis added).  There is nothing unclear about this testimony.  A reasonable juror could easily conclude that this couple was describing their "Scat Pack Challenger" as the basis for their familiarity with Scat because they believed there was some affiliation between the infringing FCA product and Scat.  This is exactly the type of source confusion that

---

[9] FCA also claims each piece of evidence is inadmissible under FED. R. EVID. 602 (lacks foundation), but never provides any explanation as to why.  To the extent this objection is based on hearsay concerns, Scat addresses those meritless concerns here.  FCA's complete failure to explain this position makes it otherwise impossible for Scat to respond to this objection.  Moreover, because Rule 602 permits the foundation to be laid through a witness's own testimony at trial, this objection is premature.  FED. R. EVID. 602.

[10] To avoid submitting duplicative evidentiary matter and multiple motions to seal, Scat cites mainly to factual matter includes as exhibits to the Declaration of Paul Bost in support of the present motion, Dkt. No 120-1 ("Bost Decl.").  We note that FCA's motion cites to exhibits in the Bost Decl. by letters that differ from the actual exhibits attached to the Bost Decl.  To avoid confusion, Scat's citations to the Bost Decl. identify exhibits by the letter used in the Bost. Decl. itself.

CASE NO. 2:14-CV-07995-R-AFM

trademark law is designed to prevent.[11]  *See Fleischmann Distilling Corp. v. Maier Brewing Co.*, 314 F.2d 149, (9th Cir. 1963) (explaining the confusion results if consumers might mistake "the source of origin of such goods or services").  In light of this clear testimony, FCA's suggestion that the couple needed to expressly say that they believed there was an affiliation is absurd.

That this couple's confusion was not directly connected with a purchasing decision is irrelevant.  Here, a reasonable juror could conclude that the couple with whom Mr. Suchy spoke were potential Scat consumers or, at the very least, a proxy for such consumers.  *See Rearden,* 683 F.3d at 1213.  Mr. Suchy testified that the couple identified themselves as consistent users of Scat's products.  Bost Decl., Ex. M; Suchy Depo. Tr. at 91:5-8.  This statement alone confirms that Mr. Suchy's testimony is relevant.  And the fact that this couple attended the Edelbrock Show, an event for automotive enthusiasts,[12] further demonstrates they are members of the relevant consuming public, or at least a proxy for that consumer demographic.  *See* Bost Decl., Ex. B at 16.

FCA next argues that Mr. Suchy's testimony should be excluded as indefinite and unreliable.  Even if that were true, there is no evidentiary rule for excluding testimony on that basis.[13]  FCA cases on this point are again inapplicable.  In *Smith*

---

[11] FCA offers an alternative interpretation for this conversation wherein the couple mentions their Scat Pack vehicle because it "called to mind to the word 'Scat'." Mot. at 12.  Under this interpretation, the conversation is still admissible as evidence of that FCA's infringing mark is similar to Scat's Scat mark.  *See AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979) (explaining that similarity of marks is a factor in the likelihood of confusion analysis).

[12] The Edelbrock Show, an event hosted by an aftermarket parts company for "automotive enthusiast."  *See* Edelbrock Car Show, http://www.edelbrockcarshow.com/, (last visited Mar. 8, 2017).

[13] To the extent FCA is attempting to contend this is a basis for exclusion under FED. R. EVID. 403, FCA fails to provide any explanation as to how it may be unfairly prejudiced by this evidence, let alone how the of such prejudice substantially outweighs its probative value, especially at this stage of the case when the only consideration of the evidence is by the Court.

CASE NO. 2:14-CV-07995-R-AFM

1    *Fiberglass Prods. v. Ameron, Inc.*, 7 F.3d 1327, 1331 (7th Cir. 1993), the Seventh

2    Circuit discussed a district court's exclusion of vague evidence because it was

3    inadmissible hearsay.  This non-binding case has no relevance here, as Mr. Suchy's

4    testimony is <u>not</u> inadmissible hearsay.  The couples' statement is not being offered

5    for the truth of the matter asserted—Scat has no interest in proving if they actually

6    own a new Dodge Challenger.  It is being offered to show the couple's confused

7    state of mind and is therefore admissible under FED. R. EVID. 803(3).  *See Lahoti*,

8    636 F.3d at 509 (customer confusion evidence is admissible to prove state of mind);

9    *Conversive,* 433 F. Supp. 2d at 1092. (ruling that confusion statements were

10   admissible because they were not offered to prove truth but to prove state of mind).

11       FCA's reliance on *Trouble v. Wet Seal, Inc.* is also misplaced.  That case

12   found that a "confusion log" was not admissible as a record of a regularly

13   conducted activity under Rule 803(6) because it failed to meet that rule's

14   requirement that the evidence include sufficient indicia of trustworthiness.  179 F.

15   Supp. 2d 291, 300 (S.D.N.Y. 2001).  Here, Mr. Suchy's testimony is not a record of

16   a regularly recorded activity and is admissible under Rule 803(3).

17       FCA also claims that Mr. Suchy's testimony is inadmissible because it is

18   biased.  This is a credibility issue for the jury to resolve and provides no grounds

19   for excluding evidence.  *See Evans*, 728 F.3d at 963 (explaining that courts may not

20   exclude evidence for credibility reasons).  Once again, the cases FCA cites have no

21   applicability.  In *Davis v. Walt Disney Co.*, the court did not exclude any evidence

22   based on bias, but merely found that the supposedly confused declarants were not

23   potential customers.  393 F. Supp. 2d 839, 846 (D. Minn. 2005).  In *Re/Max Int'l*

24   *Inc. v. Help-U-Sell Inc.*, the court did not exclude allegedly biased evidence, but

25   rather commented that it is "generally accorded little weight." 1991 WL 335364, at

26   *1 (C.D. Cal. Feb. 11, 1991).  Likewise, in *Paco Sport, Ltd. v. Paco Rabanne*

27   *Parfums*, the court did not exclude biased evidence.  Rather, in that case the court,

28

- 13 -

while acting as the fact finder, considered the proffered evidence but did not credit it as persuasive evidence of actual confusion.  86 F. Supp. 2d 305, 320 (S.D.N.Y. 2000).  None of these cases permit the exclusion of evidence based on alleged bias—a clear credibility issue for the jury.

Finally, FCA argues that Mr. Suchy's testimony is de minimis evidence of confusion.  This argument makes no sense, as Mr. Suchy's evidence is not the only evidence of actual confusion in this case.  There is no basis to exclude evidence as "de minimis."  *See supra* Section III.C.

### 2.    Bill Middaugh's Statement is Admissible.

As FCA explains in its brief, Mr. Lieb testified that Mr. Bill Middaugh approached Mr. Lieb at a Specialty Equipment Market Association ("SEMA") trade show after FCA announced its new "Scat pack" kits, and he was upset that Mr. Lieb did not inform him of the announcement of the partnership between Scat and FCA.  MIL at 13.  There is no basis for excluding this evidence of actual confusion.

First, FCA's claim that Mr. Lieb's testimony is inadmissible because it is biased is legally baseless.  Mr. Middaugh's credibility is an issue for the jury to consider and provides no grounds for excluding evidence.  *See Evans* 728 F.3d at 963.  Further, FCA's reliance on the *Norm Thompson Outfitters, Inc. v. Gen. Motors Corp.*, is misplaced, mainly because FCA mischaracterizes the case.  448 F.2d 1293, 1297 (9th Cir. 1971).  *Norm Thompson* did not address any alleged bias issues, nor did it note, as FCA falsely contends, that plaintiffs cannot "fabricate evidence of actual confusion by asking friends, family or colleagues to provide testimonials therefore."  *See* Mot. at 14.  Rather, the judge, when acting as the fact finder, weighed evidence of *secondary meaning* and merely found it unpersuasive.  *Norm Thompson*, 448 F.2d at 1298 (affirming the district court's finding that evidence was inadequate, not inadmissible).

Second, FCA's claim that Mr. Middaugh's confusion is not the type against

- 14 -

OHSUSA:766531683.6

which the trademark laws guard is also wrong.  As explained above, the Ninth

Circuit recognizes that non-consumer confusion is still probative of actual

confusion.  *See Rearden*, 683 F.3d at 1213.  Indeed, as an advertising manager for

the largest conglomerate of automotive magazines in the U.S., Mot. at 13-14, his

confusion is both probative of potential customer confusion and a potential source

of additional customer confusion.  *See id.* at 1218 (explaining that "confusion of

presumably knowledgeable and experienced trade journalists and trade show

organizers could very well influence the purchasing decisions of consumers").

Third, FCA's inability to depose Mr. Middaugh, due to no fault of Scat, has

no bearing on the admissibility of Mr. Lieb's testimony regarding Mr. Middaugh's

statement.  Maune Decl. ¶¶ 16-23. FCA does not provide any authority suggesting

otherwise.  This is because Mr. Middaugh's statement is not inadmissible hearsay.

*See* FED. R. EVID. 803 (permitting evidence of out-of-court statements "regardless

of whether the declarant is available as a witness").  Scat is not offering Mr.

Middaugh's statement to prove that Scat indeed had a business relationship with

FCA relating to the "Scat Pack," but rather to prove Mr. Middaugh's confused state

of mind under FED. R. EVID. 803(3).  *See Conversive*, 433 F. Supp. 2d at 1092.

### 3.      Eddie Solt's Statement is Admissible.

FCA has also has presented no legal basis for preventing Mr. Lieb from

testifying about his encounter with Eddie Solt.  FCA argues that Mr. Lieb's

testimony relating to Mr. Solt's statement should be excluded because FCA was

unable to depose Mr. Solt.  Although he was initially cooperative, Mr. Solt cut off

communication upon learning that he may be subpoenaed, and Scat's counsel was

unable to assist FCA in arranging his deposition.  Maune Decl. ¶¶ 2-15.  FCA's

suggestion that Scat may have been acting "nefariously" is baseless.

Because FCA was unable to depose Mr. Solt, it contends that Mr. Lieb

should not be permitted to testify of his experience involving Mr. Solt because he is

CASE NO. 2:14-CV-07995-R-AFM

OHSUSA:766531683.6

1   allegedly biased and because his testimony is allegedly hearsay.  Neither of these

2   complaints provide a basis for excluding Mr. Lieb's testimony.  As explained

3   above, such evidence of actual confusion is not hearsay because Mr. Solt's

4   statements are not offered to prove that FCA and Scat are affiliated, but to prove his

5   confused state of mind under Rule 803(3).  *See Conversive*, 433 F. Supp. 2d at

6   1092.  Nor does Mr. Lieb's alleged bias, a clear credibility issue, provide any basis

7   for exclusion.  *See Evans*, 728 F.3d at 963 (credibility not an admissibility issue).

8   FCA may cross-examine Mr. Lieb at trial if it seeks to challenge the testimony.

9        FCA's claim that Mr. Lieb's testimony reveals no actual confusion is also

10   meritless.  Mr. Lieb testified that Mr. Solt applied for a job with Scat and, during

11   his interview with Mr. Lieb, made comments revealing his mistaken belief that Scat

12   was associated with FCA, implying this confusion stemmed from FCA's Scat Pack

13   products.  *See* Bost Decl., Ex. C, Lieb Depo. Tr., 251:2-252:4.  FCA's claim that

14   this shows no confusion is merely an attempt to take advantage of ambiguous

15   testimony and, notably, FCA's counsel did not ask any further questions to attempt

16   to clarify this point.  The obvious implication of Mr. Lieb's testimony is that Mr.

17   Solt was confused about the existence of an affiliation between Scat and FCA's

18   Scat Pack products.  *See* Bost Decl., Ex. C, Lieb Depo. Tr., 251:2-252:4 (explaining

19   that Mr. Solt was familiar with Scat, and stating that he knew was the Scat Pack

20   was and was "associate[ing]" Scat with FCA).

21        Mr. Lieb's trial testimony will spell this out.  The concurrently-submitted

22   declaration clarifies, consistent with his prior testimony, that Mr. Solt's statements

23   reflected confusion between FCA Scat Pack products and Scat.  Lieb Decl. ¶¶ 6-8;

24   *See Messick v. Horizon Indus*., 62 F.3d 1227, 1231 (9th Cir. 1995) (holding that it

25   is not improper to submit a declaration for "elaborating upon, explaining or

26

27

28

CASE NO. 2:14-CV-07995-R-AFM

OHSUSA:766531683.6

clarifying prior testimony elicited by opposing counsel on deposition").[14]

FCA also incorrectly contends that Mr. Solt's testimony should be excluded because it did not occur in the context of a purchasing decision. The jury could reasonably find that, as a "car guy," Mr. Solt was a potential customer or proxy for customers of Scat's products. *See Rearden,* 683 F.3d at 1213*; see also* MIL at 16 (arguing that Mr. Solt's confusion may have been temporary because he was "a car guy familiar with the automotive parts aftermarket") (internal quotations omitted).[15] Further, the jury could find that the confusion of a job applicant, who likely prepared for his interview, suggests that potential consumers would be confused as well. *See Rearden*, 683 F.3d at 1215-16 (explaining that the confusion of a party "who presumably has much more familiarity" suggests that "it is probable that consumers, who have less familiarity, would also experience confusion").

FCA also alleges that Scat's sale of its SCAT packs somehow warrants exclusion of evidence related to Mr. Solt's confusion. FCA identifies no authority holding that this is a basis to exclude relevant evidence, particularly when there is no evidence that Scat's products had anything to do with Mr. Solt's confusion. *See Athleta, Inc. v. Pitbull Clothing Co.*, No. CV 12-10499-CAS (FMOx), 2013 U.S. Dist. LEXIS 6867, at *27-29 (C.D. Cal. Jan. 7, 2013) (rejecting defendant's attempt to blame plaintiff's conduct for actual confusion when there was no evidence that plaintiff's conduct influenced plaintiff's evidence of actual confusion). As is clear from Mr. Lieb's testimony, Mr. Solt believed there was an affiliation between Scat and FCA because of his knowledge of FCA's Scat Pack products. Lieb Decl. ¶ 7.

Finally, if FCA feels that Craig Schenasi contradicted Mr. Lieb regarding Mr.

---

[14] *See also In re Katz Interactive Call Processing Patent Litig.*, No. 07-ML-01816-C-RGK (FFMx), 2009 U.S. Dist. LEXIS 132093, at *146 (C.D. Cal. Aug. 3, 2009) (refusing to strike a clarifying declaration).

[15] FCA's argument that Mr. Solt's confusion would correct itself because of his knowledge of the aftermarket parts industry misses the point. If Mr. Solt was confused, it provides evidence that others in the field, including potential consumers, may similarly be confused.

- 17 -

1   Solt's statement, FCA is free to bring that out with cross examination. *Johnson v.*
2   *Hedgpeth*, No. ED CV 09-1577-GW (CT), 2010 U.S. Dist. LEXIS 43403, at *15-
3   16 (C.D. Cal. Feb. 25, 2010) ("through cross-examination, witness can be shown to
4   be biased or that witnesses testimony is exaggerated or unbelievable").

5           **4.     Mr. Lieb Can Testify about the Australian Visitor.**

6           FCA also provides no legal basis for excluding Mr. Lieb's testimony
7   regarding the statement of an Australian visitor. FCA's argues, with no evidence,
8   that the statement of this Australian visitor should be excluded because Scat's
9   interrogatory response does not "supply any information that would indicate that
10  this Australian visitor was a potential customer of Plaintiff." FCA's interrogatory,
11  however, does not ask for any information as to whether the Australian visitor was
12  a potential customer. *See* Bost Decl., Ex. B. at 15. Moreover, FCA's counsel did
13  not bother to ask Mr. Lieb about this statement during his seven hour deposition.

14          FCA's failure to discover relevant information does not provide a basis for
15  excluding Scat's unrequested evidence. FCA's mere speculation that this
16  Australian visitor might not be a potential customer, due to its own failure to seek
17  that information during discovery, does not provide any basis for excluding the
18  evidence. Reasonable jurors could readily conclude that the Australian visitor's
19  attendance of the Pomona Swap Meet, an event that "draws spectators from all
20  across the globe to shop over 15 miles of hard to find car parts and accessories,"[16]
21  while visiting from abroad, evidences that he was a potential customer or, at the
22  very least, a valid proxy for potential customers. *Rearden,* 683 F.3d at 1213.

23          FCA's claim that this evidence should be exclude because it post-dates Scat's
24  sales of Scat packs is also baseless. FCA provides no evidence that Scat's sale of
25  Scat packs had any effect on this Australian visitor's confusion, nor is there any.

26

27  [16] *See* Pomana Swap Meet, http://www.pomonaswapmeet.com/event-info/car-
    show-hours-dates/, (last visited Mar. 8, 2017).
28

CASE NO. 2:14-CV-07995-R-AFM

OHSUSA:766531683.6

*See Athleta,* 2013 U.S. Dist. LEXIS 6867, at \*27-29 (dismissing a defendants baseless claims of plaintiff-manufactured confusion when there was no evidence that it was linked to proffered instances of actual confusion).

### 5.    Paul Bosserman's Statements are Admissible.

Mr. Bosserman witnessed the confusion of a woman named Jennifer during a date, and also from workers at a tint-shop.  FCA's contention that Paul Bosserman's testimony is inadmissible regarding his two witnessed instances of actual confusion is baseless.

FCA is incorrect to claim that Jennifer's confusion is irrelevant because she was not a Scat customer and she was not engaged in a purchase.  As Mr. Bosserman explained in his deposition, Jennifer expressed confusion regarding the relationship between Scat and her Scat Pack aftermarket performance upgrade kit upon hearing about Scat.  Bost. Decl., Ex. W, Bosserman Depo Tr. at 68:10-19.  She was aware of the infringing mark, and assumed a relationship when she learned of Scat's mark.  This is textbook reverse confusion.[17]  Moreover, the fact that Jennifer purchased a Scat Pack aftermarket performance kit demonstrates she was interested in the high performance aftermarket, and a potential customer of Scat's offerings.  *See Rearden,* 683 F.3d at 1215 (potential customer confusion is relevant).

For the same reasons, FCA fails to show that Mr. Bosserman's other experience with confusion is inadmissible.  Mr. Bosserman also testified about an incident where workers at a neighboring tint-shop were examining a Scat Pack vehicle and asked Mr. Bosserman if there was any relationship between Scat and the Scat Pack.  Bost. Decl., Ex. W, Bosserman Depo Tr. at 76:2-24.  This is relevant confusion.  These shop workers are industry professionals who work on cars for a living.  If they suffer confusion in the automotive marketplace, the

---

[17] *See JL Bev. Co., LLC v. Jim Beam Brands Co.,* 828 F.3d 1098, 1108-09 (9th Cir. 2016) (explaining that reverse confusion "creates a potential that consumers will assume that" the senior mark refers to the junior mark "and thus perceive that the businesses are somehow associated") (citations omitted).

CASE NO. 2:14-CV-07995-R-AFM

OHSUSA:766531683.6

average consumer is likely to as well.  *See Rearden*, 683 F.3d at 1216 (explaining that "confusion on the part of a sophisticated non-consumer may reasonably signal that less sophisticated consumers would also be confused").[18]

FCA's claim that Mr. Bosserman's testimony should be excluded for bias is wrong, as it is a credibility issue for the jury. It is yet another premature argument at this point in the case. *See Evans*, 728 F.3d at 963.  FCA also claims Mr. Bosserman's testimony is unreliable because the car being examined in his story does not say the words "Scat Pack" on it.  This argument is nonsense, as Mr. Bosserman never claimed that it did.  Bost. Decl., Ex. W, Bosserman Depo Tr. at 76:18-24 (identifying the Scat Pack car by its <u>logo</u>).

Finally, FCA's hearsay objections are baseless.  Neither the statements made by Jennifer or the tint shop workers are inadmissible hearsay, as Scat is not offering these statements to prove that either declarants' confused understanding was true, but rather to prove their confused state of mind under FED. R. EVID. 803(3).  *See Conversive*, 433 F. Supp. 2d at 1092.  The fact that those declarants might be the best people to discuss their states of mind is irrelevant to the admissibility of Mr. Bosserman's testimony.  *See* FED. R. EVID. 802 (permitting testimony regarding out-of-court statements "regardless of whether the declarant is available").

### 6.   Brian McCullough's Testimony is Admissible.

FCA also fails to identify any reason to exclude Brian McCullough's testimony.  As explained in Scat's interrogatory responses, Mr. McCullough witnessed actual confusion involving a man at the Edelbrock Show in 2016

---

[18] Scat was not aware of, and thus did not disclose, this instance of actual confusion interrogatory responses.  Mr. Bosserman provided this information at deposition when prompted.  Because FCA had a full opportunity to depose Mr. Bosserman on these about the tint shop incident, there is no reason to exclude his testimony.  *See JIPC Mgmt. v. Incredible Pizza Co.*, 2009 U.S. Dist. LEXIS 133019, at *27-28 (C.D. Cal. July 14, 2009) (finding belated disclosure of a witness harmless when witness was deposed and there was no prejudice); *Sanders v. Edge Holdings*, 2012 U.S. Dist. LEXIS 183204, at *5 (S.D. Cal. Dec. 28, 2012) (finding failure to disclose witness was harmless when witness was deposed).

1    requesting a SCAT decal because he had a Scat Pack.  Bost Decl., Ex. B at 19.

2          FCA first argues that Mr. McCullough's testimony should be excluded

3    because Tom Lieb referred to undisclosed incidents of actual confusion when asked

4    about confusion witnessed by Mr. McCullough.  Scat has never indicated any intent

5    to offer any of these undisclosed instance as evidence.

6          FCA's other complaints regarding McCullough's testimony are baseless.

7    First, FCA claims that this statement does not show evidence of actual confusion is

8    incorrect.  As Mr. McCullough will testify at trial, Mr. McCullough understood this

9    man to be requesting the SCAT decal because he believed it was somehow

10   associated with FCA's Scat Pack products, which is an example of actual

11   confusion.  Declaration of Brian McCullough  ¶¶ 4-6.  Further, even if this man was

12   merely recognizing the similarity between the marks, such evidence is still

13   admissible to demonstrate that customers acknowledge the similarity.[19]

14         Second, FCA's claim that this man was not a potential customer is wrong.  A

15   juror could reasonably conclude his visit to the Scat booth at the Edelbrock Show,

16   an event hosted by an aftermarket parts company for "automotive enthusiast,"[20] was

17   likely a potential customer or, at minimum, a proxy for potential customers.  *See*

18   *Rearden,* 683 F.3d at 1213 (potential consumer and proxy confusion is relevant).

19         Third, FCA again offers no explanation as to how sales of Scat's SCAT

20   packs had any effect on this occurrence, nor does FCA identify any authority for

21   excluding evidence on that basis.

22         Finally, FCA's claim that this testimony is inadmissible hearsay is wrong.

23   Mr. McCullough's testimony being offered to prove this man's confused state of

24   mind, and not the truth of that matter—that this man owned a "Scat Pack."  *See*

25

26   [19] *See Sleekcraft*, 599 F.2d at 348-49 (describing similarity between the marks as a
     factor in likelihood of confusion analysis).

27   [20] *See* Edelbrock Car Show, http://www.edelbrockcarshow.com/, (last visited Mar.
28   8, 2017).

- 21 -

*Lahoti*, 636 F.3d at 509 (statements admissible to prove state of mind).

### 7.   Lauren Maiman's Testimony on Confusion is Admissible.

Nor does FCA provide any reason to exclude Lauren Maiman's testimony. Ms. Maiman is a public relations agent working in the automotive industry. One of her clients, Jon Kunzman, is the owner of a marketing company named ARC, that focuses on the automotive aftermarket industry. *See* Bost. Decl., Exhibit O, Maimain Depo. Tr. 11:14-12:11.[21]  Ms. Maiman testified that she encountered a story about Chrysler's Scat Pack aftermarket parts kits, and had the mistaken belief that they were associated with Scat. *Id*. at 13:18-14:7. When she raised the issue with Mr. Kunzman, he too was unsure if there was any relationship and had to contact Scat to ask. *Id*. at 17:5-9.

Contrary to FCA's overly narrow view, this evidence is undoubtedly relevant. It shows that two marketing professionals in the automotive aftermarket industry were confused by FCA's infringement of Scat's marks. Ms. Maiman and Mr. Kunzman's confusion demonstrates that potential consumers were likely confused as well.[22]  *See Rearden*, 683 F.3d at 1218 (confusion of "presumably knowledgeable and experienced" industry insiders is relevant). And FCA's claim of Ms. Maiman's biased is a credibility issue, not an issue of admissibility. *See Evans*, 728 F.3d at 963 (credibility issues are not relevant to admissibility).

Finally, FCA's footnote argument that Ms. Maiman's testimony should be excluded because Scat did not supplement its interrogatory responses should also be rejected. MIL at 21, n.70. Scat identified Ms. Maiman as a possible actual confusion witness to FCA shortly before the close of fact discovery and FCA had a

[21] ARC describes itself as an "a full service marketing and communications agency that specializes in the automotive aftermarket industry." *See* http://www.autorebateco.com/

[22] Ms. Maiman's testimony regarding Mr. Kuzman's conduct is not hearsay, and it is offered solely to prove his confused state of mind. *See Lahoti*, 636 F.3d at 509 (confusion evidence was admissible to prove state of mind).

full opportunity to depose her and learn any information it required regarding her experience. *See JIPC Mgmt.*, 2009 U.S. Dist. LEXIS 133019, at \*27-28 (belated witness disclosure was harmless when witness was deposed and there was no prejudice); *Sanders*, 2012 U.S. Dist. LEXIS 183204, at \*5 (failure to disclose witness was harmless when witness was deposed).  FCA has suffered no prejudice from this oversight there is no reason to punish Scat for not formally updating an interrogatory response with information that was otherwise disclosed to FCA.  *See* FED. R. CIV. P. 37(C)(1) (prohibiting exclusion of non-disclosed evidence when the non-disclosure was harmless).

### 8.   Mr. Lieb Can Testify About Clay Smith's Statement.

FCA's attempt to exclude the testimony regarding Clay Smith is also misguided.  Contrary to FCA's assertion, Mr. Smith's statement is relevant to show that the industry recognizes FCA's encroachment of Scat's trademark rights, which goes to several *Sleekcraft* factors, including actual confusion, similarity of the marks, and relatedness of the goods.  *Sleekcraft*, 599 F.2d at 353-54 (9th Cir. 1979).  Further, FCA's allegations of bias concern credibility, not admissibility.  *Evans*, 728 F.3d at 963.  Nor is Mr. Smith's statement inadmissible hearsay.  *See Lahoti*, 636 F.3d at 509 (statements admissible to prove state of mind).[23]

### 9.   Skateborda22@gmail.com's Question is Admissible.

FCA also fails to identify any basis for excluding Mr. Napper's statement in his expert report regarding the emails from Skateborda22@gmail.com requesting information about the Scat Pack cars.  FCA complains that this evidence is unreliable because it stems from the internet, but FCA once again fails to cite any cases pertaining to the exclusion of evidence.  In fact, each of its cases (none of

---

[23] FCA's footnote argument suggesting this evidence should be excluded for non-disclosure should be rejected.  FCA deposed Mr. Lieb about this evidence and therefore any non-disclosure is harmless.  FED. R. CIV. P. 37(C)(1) (non-disclosed evidence may not be excluded when the non-disclosure was harmless).

which are binding precedent) demonstrate that the reliability of internet evidence is an issue of weight, not admissibility. *See QVC Inc. v. Your Vitamins Inc.*, 439 F. App'x 165, 169 (3d Cir. 2011) (non-precedential)[24] (approving of the district court's decision to give blog comments "only limited weight."); *Therma-Scan, Inc. v. Thermoscan, Inc.*, 295 F.3d 623636 (6th Cir. 2002) (finding that internet evidence provided internet "weak support" to show likelihood of confusion); *Nordstrom, Inc. v. Nomorerack Retail Grp., Inc.*, No. C12-1853-RSM, 2013 U.S. Dist. LEXIS 41810, at *21 (W.D. Wash. Mar. 25, 2013) ("While this [internet] evidence of this potential customer confusion is <u>relevant</u>, the Court finds that [the plaintiff] has not sufficiently demonstrated actual confusion in this case.") (emphasis added); *Blue Bell Creameries, L.P. v. Denali Co., LLC*, No. H-08-0981, 2008 U.S. Dist. LEXIS 58083, at *14-15, n.4 (S.D. Tex. July 31, 2008) (declining to credit internet evidence but clarifying that such internet evidence was not generally inadmissible).

FCA also contends that Scat's sales of SCAT packs should bar this evidence but, once again, FCA offers no explanation suggesting those packs had any effect on Skateboarda22's confusion.  Indeed, the language of his second email refers to "special cars" that "come with a scat pack edition," a clear reference to FCA's infringing products.  Bost Decl., Ex. Y.

Finally, FCA incorrectly states, with no explanation or argument, that these emails constitute inadmissible hearsay.  These emails reflect inquiries, not statements, and thus are not hearsay.  *See Kreation Juicery,* 2014 U.S. Dist. LEXIS 180710, at *7 n.2 (explaining that customer inquiries are not hearsay and are offered to prove state of mind).  Mr. Napper considered them only to show a

---

[24] FCA once again failed to indicate that this case has no precedential value.  *See* footnote 6 above.

OHSUSA:766531683.6

1  confused state of mind.  *Lahoti*, 636 F.3d at 509.[25]

2      **10.    The Dodge Blog Commenter's Question is Admissible**

3      FCA's arguments for the exclusion of the blog post requesting an "[u]pdate

4  on when/if The Scat Items will be available for the Dodge Dart" are meritless.

5  Bost. Decl., Ex. Z.  Despite FCA's contrary interpretation, a reasonable juror could

6  readily conclude this statement shows actual confusion, and the poster referred to

7  "Scat" items, not "Scat Pack" items.  Indeed, this evidence is relevant even if

8  FCA's interpretation is believed, as it evidences that the consuming public does not

9  find that the "Pack" portion of FCA's infringing mark to be a significant term.  *See*

10  *Sleekcraft*, 599 F.2d at 348-49 (similarity of marks is a factor in infringement

11  analysis).  Further, under either interpretation, this poster is inquiring about

12  aftermarket performance parts, and is thus a potential customer or a proxy for

13  potential customers.  *See Rearden,* 683 F.3d at 1213.  Finally, FCA unexplained

14  objection that this evidence is inadmissible hearsay is wrong.  It is an inquiry and

15  offered to show state of mind.  *Kreation Juicery,* 2014 U.S. Dist. LEXIS 180710, at

16  *7 n.2 (customer inquiries are not hearsay and are offered to prove state of mind).[26]

17  **IV.    CONCLUSION**

18      For the foregoing reasons, FCA's motion in limine is procedurally improper

19  and fails to set forth a valid basis for excluding any of Scat's evidence.  FCA's

20  motion should be denied.

21  Dated:        March 9, 2017                MARK P. WINE
                                              Orrick, Herrington & Sutcliffe LLP

22                                            By: _____/s/ Mark P. Wine_____
23                                                      MARK P. WINE
                                                  Attorneys for Plaintiff
24                                              SCAT ENTERPRISES, INC.

25  _____

26  [25] FCA's argument that this evidence should be excluded because it was not disclosed during fact discovery is incorrect, as this evidence is expert reliance
27  evidence properly disclosed was disclosed during the period for expert discovery.

28  [26] This evidence was properly disclosed during expert discovery.  *See* footnote 25.

CASE NO. 2:14-CV-07995-R-AFM

OHSUSA:766531683.6