1  SHEPPARD MULLIN RICHTER & HAMPTON LLP
   KENT R. RAYGOR, Cal. Bar No. 117224
2  PAUL A. BOST, Cal. Bar No. 261531
   1901 Avenue of the Stars, Suite 1600
3  Los Angeles, California  90067-6017
   Telephone:   (310) 228-3700
4  Facsimile:   (310) 228-3701
   E-mail:      kraygor@sheppardmullin.com
5               pbost@sheppardmullin.com

6  Attorneys for Defendant/Counterclaimant
   FCA US LLC (formerly "Chrysler Group LLC")

7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                  WESTERN DIVISION

11 | SCAT ENTERPRISES, INC., a        | Case No. 2:14-cv-07995 R (AFMx)
12 | California Corporation,           |
                                      | **DEFENDANT AND
13 |          Plaintiff,              | COUNTERCLAIMANT FCA US
                                      | LLC'S REPLY BRIEF IN SUPPORT
14 |     v.                           | OF ITS MOTION *IN LIMINE* FOR
                                      | AN ORDER PRECLUDING SCAT
15 | FCA US LLC, a Delaware Limited   | ENTERPRISES, INC. FROM
   | Liability Company,               | PRESENTING EVIDENCE OF
16 |                                  | ACTUAL CONFUSION**
   |          Defendant.              |
17                                    | [*Supplemental Declaration Of Paul A.
18 | FCA US LLC, a Delaware Limited   | Bost* submitted concurrently herewith
   | Liability Company,               | under separate cover]
19 |                                  |
   |          Counterclaimant.        | <u>Hearing</u>
20 |                                  | Courtroom: 880, 255 East Temple Street
   |     v.                           | Judge:     Hon. Manuel L. Real
21 |                                  | Time:      10:00 a.m.
   | SCAT ENTERPRISES, INC., a        | Date:      April 3, 2017
22 | California Corporation,          |
23 |          Counterdefendant.       |
24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION. ............................................................................... 1

II.   CHRYSLER'S MOTION IS PROCEDURALLY PROPER ............................ 3

III.  PLAINTIFF HAS NOT ATTEMPTED TO MEANINGFULLY REBUT
      CHRYSLER'S EVIDENCE THAT PLAINTIFF TOOK ACTIONS
      INTENDED TO CREATE ACTUAL CONFUSION. ..................................... 4

IV.   PLAINTIFF'S EVIDENCE OF PURPORTED ACTUAL CONFUSION
      IS *DE MINIMIS* AND, THUS, NOT PROBATIVE OF A LIKELIHOOD
      OF CONFUSION OR ADMISSIBLE. ........................................................ 9

V.    NONE OF PLAINTIFF'S ANECDOTAL STORIES OF ACTUAL
      CONFUSION IS ADMISSIBLE OR ACTUALLY REFLECTS TRUE
      CONFUSION. ................................................................................... 15

      A.   Plaintiff's Proffered Testimony Regarding Unspecified Statements
           From Unidentified Out-Of-Court Declarants Constitutes
           Inadmissible Hearsay. ............................................................... 16

      B.   Testimony Regarding Actual Confusion Not Probative Of
           Purchasing Confusion Is Irrelevant. ............................................ 21

VI.   CONCLUSION. ................................................................................ 24

1

<u>TABLE OF AUTHORITIES</u>

2

Page(s)

3

<u>Cases</u>

4

*Accuride Int'l, Inc. v. Accuride Corp.*

5
    871 F.2d 1531 (9th Cir. 1989) ................................................................21

6

*Alchemy II Inc. v. Yes! Entertainment Corp.*

7
    844 F. Supp. 560 (C.D. Cal. 1994) .................................................12, 20

8

*Amstar Corp. v. Domino's Pizza, Inc.*
    615 F.2d 252 (5th Cir. 1980) ...................................................................14

9

*Avery Dennison Corp. v. Acco Brands, Inc.*

10
    1999 WL 33117262 (C.D. Cal. Oct. 12, 1999) ......................................20

11

*Burch v. Regents of the Univ. of Cal.*

12
    433 F. Supp. 2d 1110 (E.D. Cal. 2006) ....................................................3

13

*Cairns v. Franklin Mint Co.*

14
    24 F. Supp. 2d 1013 (C.D. Cal. 1998) ....................................................14

15

*Checkpoint Sys., Inc. v. Check Point Software Techs., Inc.*

16
    269 F.3d 270 (3d Cir. 2001) ....................................................................21

17

*Conversive, Inc. v. Conversagent, Inc.*

18
    433 F. Supp. 2d 1079 (C.D. Cal. 2006) ..................................................19

19

*Covertech Fabricating, Inc. v. TVM Building Products, Inc.*

20
    124 F. Supp. 3d 489 (W.D. Pa. 2015) .....................................................14

21

*Duluth News-Tribune v. Mesabi Publishing Co.*
    84 F.3d 1093 (8th Cir. 1996) ...................................................................10

22

*Entrepreneur Media, Inc. v. Smith*

23
    279 F.3d 1135 (9th Cir. 2002) ...........................................................11, 13

24

*Esquivel v. Vistar Corp.*

25
    2012 U.S. Dist. LEXIS 26686 (C.D. Cal. Feb. 8, 2012) ..........................4

26

*Filipino Yellow Pages, Inc. v. Asian J. Publ'ns, Inc.*

27
    198 F.3d 1143 (9th Cir. 1999) .................................................................20

28

*Glow Indus. v. Lopez*
    252 F. Supp. 2d 962 (C.D. Cal. 2002)....................................................................11

*Haddock v. Countrywide Bank, NA*
    2015 U.S. Dist. LEXIS 146291 (C.D. Cal. Oct. 27, 2015) .......................................4

*Harvey Barnett, Inc. v. Shidler*
    338 F.3d 1125 (10th Cir. 2003) .................................................................................10

*Icon Enterprises Int'l, Inc. v. Am. Prod. Co.*
    2004 WL 5644805 (C.D. Cal. Oct. 7, 2004) ............................................................20

*Inc. Pub. Corp. v. Manhattan Magazine Inc.*
    616 F. Supp. 370 (S.D.N.Y. 1985), aff'd, 788 F.2d 3 (2d Cir. 1986) .....................11

*Jamdat Mobile, Inc. v. Jamster Int'l Sarl Ltd., Inc.*
    2005 WL 5960925 (C.D. Cal. Oct. 28, 2005) ..........................................................20

*La. World Exposition v. Logue*
    746 F.2d 1033 (5th Cir. 1984) ..................................................................................13

*Lahoti v. Vericheck, Inc.*
    708 F. Supp. 2d 1150 (W.D. Wash. 2010) ...............................................................19

*Matrix Motor Co., Inc. v. Toyota Jidosha Kabushiki Kaisha*
    290 F. Supp. 2d 1083 (C.D. Cal. 2003).....................................................................20

*Mattel, Inc. v. MCA Records, Inc.*
    28 F. Supp. 2d 1120 (C.D. Cal. 1998), aff'd, 296 F.3d 894 (9th Cir.
    2002) ..........................................................................................................................10

*Medici Classics Prods. LLC v. Medici Group LLC*
    683 F. Supp. 2d 304 (S.D.N.Y. 2010) ......................................................................10

*Monster, Inc. v. Dolby Labs. Licensing Corp.*
    920 F. Supp. 2d 1066 (N.D. Cal. 2013)....................................................................15

*Montoya v. Orange County Sheriff's Dept.*
    987 F. Supp. 2d 981 (C.D. Cal. 2013).........................................................................3

*Nora Beverages Inc. v. Perrier Group of America Inc.*
    269 F.3d 114 (2d Cir. 2001) ......................................................................................10

*Nordstrom, Inc. v. 7525419 Canada Inc.*
    2012 WL 12507605 (W.D. Wash. Dec. 27, 2012)....................................................22

*Nordstrom Inc. v. NoMoreRack Retail Group Inc.*
    2013 WL 1196948 (W.D. Wash. March 25, 2013)................................................22

*Nutri/System Inc. v. Con-Stan Industries Inc.*
    809 F.2d 601 (9th Cir. 1987)................................................11

*Walter v. Mattel, Inc.*
    210 F.3d 1108 (9th Cir. 2000)................................................21

*Pebble Beach Co. v. Tour 18 I, Ltd.*
    942 F. Supp. 1513 (S.D. Tex. 1996)................................................13

*Pinterest, Inc. v. Pintrips, Inc.*
    140 F. Supp. 3d 997 (N.D. Cal. 2015)................................................22

*Playboy Enters. v. Netscape Commc'ns. Corp.*
    55 F. Supp. 2d 1070 (C.D. Cal. 1999)................................................15

*Rearden LLC v. Rearden Commerce, Inc.*
    683 F.3d 1190 (9th Cir. 2012)................................................21, 22, 23

*Safeway Stores, Inc. v. Safeway Ins. Co.*
    657 F. Supp. 1307 (M.D. La. 1985)................................................14

*Soc'y of Fin. Examiners v. Nat'l Ass'n of Certified Fraud Examiners, Inc.*
    41 F.3d 223 (5th Cir. Tex. 1995)................................................14

*Stonefire Grill, Inc. v. FGF Brands, Inc.*
    987 F. Supp. 2d 1023 (C.D. Cal. 2013)................................................12, 21

*Sun Banks of Fla. v. Sun Fed. Savings & Loan Ass'n*
    651 F.2d 311 (5th Cir. 1981)................................................14

*U.S. Conf. of Catholic Bishops v. Media Research Ctr.*
    432 F. Supp. 2d 616 (E.D. Va. 2006)................................................11

*Visa Int'l Serv. Ass'n v. E. Fin. Fed. Credit Union*
    1992 U.S. App. LEXIS 14965 (9th Cir. June 19, 1992)................................................10

*Vitek Sys., Inc. v. Abbott Labs.*
    675 F.2d 190 (8th Cir. 1982)................................................21

<u>Statutes</u>

Lanham Act..............................................................................................21

<u>Other Authorities</u>

FED. R. CIV. P. 56(c)(2)..........................................................................3, 4

MCCARTHY ON TRADEMARKS, § 23:14...................................................1

1  **I.**    **INTRODUCTION.**

2      Beneath the sound and fury of Plaintiff Scat Enterprises, Inc.'s ("**Plaintiff**")

3  opposition ("**Opp.**") to Defendant FCA US LLC's ("**Chrysler**") motion *in limine* (the

4  "**Motion**") is the unambiguous acknowledgement that, *despite the parties' respective*

5  *significant advertising efforts and product sales over the past 50 years, Chrysler's use*

6  *of "Scat Pack" has resulted in—at most—11 instances of purported actual confusion*.

7  Even if each of these instances is a *bona fide* instance of actual confusion (none is),

8  this evidence is plainly *de minimis* in light of the parties' significant sales and

9  advertising efforts and—contrary to Plaintiff's purported authority otherwise—

10  inadmissible.  *See* MCCARTHY ON TRADEMARKS, § 23:14 ("Evidence of only a small

11  number of instances of actual confusion *can be dismissed as inconsequential or de*

12  *minimis*") (emphasis added).  Because it is *de minimis*, Plaintiff's evidence of

13  purported actual confusion is not merely entitled to little weight; *it is entitled to no*

14  *weight or consideration at all*.

15      The Court also should overrule Plaintiff's procedural objections to Chrysler's

16  Motion.  Plaintiff has not identified any rule governing the filing or timing of motions

17  *in limine*, much less a rule that Chrysler has violated, either in letter or spirit.  And

18  while Plaintiff argues that Chrysler should have raised certain of the issues identified

19  in its Motion pursuant to an evidentiary objection instead of a motion *in limine*, it has

20  not identified any prejudice it has suffered due to the manner in which Chrysler raised

21  these issues for the Court's consideration.

22      Plaintiff declines to meaningfully rebut Chrysler's evidence that Plaintiff

23  undertook an intentional, coordinated effort in mid-2015 to manufacture actual

24  confusion evidence by advertising its sale of "The Real Deal 'Original' Scat Packs".

25  Plaintiff's founder and president, Tom Lieb, does not even address that advertising

26  campaign in his declaration submitted in support of Plaintiff's opposition, presumably

27  because it is under oath.  Instead, Plaintiff argues Chrysler has not shown that

28  Plaintiff's willful, bad faith actions have had their desired effect, that is, resulted in

actual confusion.  In other words, Plaintiff argues:  yes, we tried to create confusion, but because Chrysler cannot directly tie any of the alleged actual confusion incidents to our actions (because of Plaintiff's witnesses' vague, hearsay-ridden testimony), our efforts to create confusion are irrelevant.  But Plaintiff cannot have it both ways, contending that, on one hand, Chrysler's use of "Scat Pack" in commerce has resulted in confusion, but, on the other hand, its own misappropriated use of "Scat Packs" and "Scat Pack" to now advertise Plaintiff's own products, done while this litigation is pending, is irrelevant to confusion.

Plaintiff also is incorrect on the relevant law concerning hearsay.  Plaintiff's purported evidence of actual confusion is so vague, indefinite, and lacking in detail that no trier of fact could reasonably consider it probative of consumer confusion.  Although certain courts have found that statements reflecting purported actual confusion might fall under the state-of-mind exception to the rule against hearsay, when it is as vague, indefinite, and lacking in detail as that proffered by Plaintiff and the declarant is not the person testifying and often has not even been identified, courts in the Ninth Circuit regularly exclude such statements for lacking sufficient indicia of reliability and as inadmissible hearsay.  The Court should exercise its discretion here and do the same.  Otherwise, Plaintiff's president and other witnesses who are clearly biased in favor of Plaintiff will have the unfettered opportunity to present evidence of purported actual confusion without Chrysler having the opportunity to cross-examine the actual declarants of the statements at issue, an unfair violation of Chrysler's due process rights.

For these reasons, and those addressed in Chrysler's Motion [Dkt. 120], the Court should preclude Plaintiff from presenting these 11 purported instances of actual confusion to any trier of fact.

## II.   **CHRYSLER'S MOTION IS PROCEDURALLY PROPER.**

Plaintiff has not cited any authority for its blanket statement that Chrysler's Motion is procedurally improper or untimely.  Instead, it relies on what it understands to be "common practice" concerning the filing of motions *in limine*.

There are no Local Rules setting forth any particular requirements concerning the filing or timing of motions *in limine*.  Instead, they are governed by the general rules for motion practice set forth in C.D. CAL. LOCAL RULES 6 and 7, and Chrysler has complied with those Rules.  Likewise, neither the prevailing *Order Re: Notice To Counsel* [Dkt. 89] in this action nor this Court's procedures set forth at http://www.cacd.uscourts.gov/honorable-manuel-l-real include any rules or procedures specifically governing the filing of motions *in limine*.

Plaintiff's dispute with Chrysler's Motion is academic and formalistic.  It argues that in order to dispute the admissibility of Plaintiff's evidence at issue, Chrysler should have filed evidentiary objections pursuant to FED. R. CIV. P. 56(c)(2) ("A party *may* object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence") (emphasis added), not this motion *in limine*.  That Rule is permissive, not mandatory.  In any event, what is the difference as to which format Chrysler uses to raise its objections?  There is none.[1]

By the same token, Chrysler's Motion—while admittedly relevant to the issues before the Court on the parties' motions for partial summary judgment—does not subvert any page limit associated with summary judgment briefing, and should not be stricken on that ground.  Plaintiff has not cited to any cases where a motion was stricken for violating a page limit remotely factually similar to the present

---

[1] Contrary to Plaintiff's suggestion, Plaintiff's own authority holds that relevance objections, for example, are appropriately raised at summary judgment. *See Montoya v. Orange County Sheriff's Dept.*, 987 F. Supp. 2d 981, 984 (C.D. Cal. 2013) ("the Court may consider Plaintiff's views on whether Defendant's evidence is relevant" on summary judgment).  Plaintiff's best case, *Burch v. Regents of the Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006), merely states the Court's preference that parties argue the issue of materiality and relevance, not object on the basis of materiality and relevance.

1  circumstances.  *See Haddock v. Countrywide Bank, NA*, 2015 U.S. Dist. LEXIS

2  146291, at **17-18 (C.D. Cal. Oct. 27, 2015) (plaintiff's opposition to a motion to

3  dismiss was 59 pages in length, under 14-point font, and single-spaced); *Esquivel v.*

4  *Vistar Corp.*, 2012 U.S. Dist. LEXIS 26686, at *3, n.1 (C.D. Cal. Feb. 8, 2012)

5  (defendant filed a 25-page motion to dismiss and a 25-page "alternative motion to

6  dismiss.").

7       Plaintiff's objections stem from the timing of Chrysler's Motion; it was filed

8  somewhat contemporaneous to Chrysler's motion for partial summary judgment and

9  is set for hearing on the same day as the parties' motions for partial summary

10  judgment.  But were Chrysler to raise the same issues set forth in its motion *in limine*

11  in the form of evidentiary objections, as Plaintiff suggests it should have done

12  pursuant to Rule 56(c)(2), those objections, too, would have been decided according

13  to the briefing schedule of the parties' motions for partial summary judgment and

14  heard at the same time as those motions.  Plaintiff's procedural objections lack merit.

15  **III.   <u>PLAINTIFF HAS NOT ATTEMPTED TO MEANINGFULLY REBUT</u>**

16  **<u>CHRYSLER'S EVIDENCE THAT PLAINTIFF TOOK ACTIONS</u>**

17  **<u>INTENDED TO CREATE ACTUAL CONFUSION.</u>**

18       Despite its characterization of them as "inflammatory" [Opp. p. 6], Plaintiff has

19  not set forth any evidence actually rebutting Chrysler's evidence that Plaintiff took

20  actions specifically intended to create actual confusion with Chrysler's use of "Scat

21  Pack".  In his declaration submitted with Plaintiff's opposition, Plaintiff's president

22  Tom Lieb—the mastermind, with Plaintiff's CFO, behind commencing use of "the

23  Original 'Real Deal' Scat Packs" in mid-2015—does not deny that he began use of

24  the term "Scat Packs" in order to attempt to create actual confusion with Chrysler,

25  much less address Chrysler's allegations, generally or specifically.[2]  And Plaintiff has

26

27  _____

[2] The only evidence related to Plaintiff's intent to create actual confusion Mr. Lieb
addresses in his declaration is his e-mail correspondence with his friend Gary

28  Boerman, in which he e-mails Mr. Boerman the following:  "want some fun . . . Go
on chryslers (Dodge) Webb sites say you want to buy a Challenger Scat Pack because

1  not provided any declaration from its CFO, Craig Schenasi, as to Plaintiff's

2  motivation for deciding to start using "Scat Packs", for trying to purchase the domain

3  name "*ScatPack.com*", and for actually purchasing other "Scat Pack"-related domain

4  names (*scatpacks.com*, *scatpackages.com*, and *scatpaks.com*)—all within days

5  following the parties' unsuccessful mediation in April 2015.  Plaintiff's silence speaks

6  volumes.

7        Instead of disputing the facts underlying Chrysler's allegations, Plaintiff *argues*

8  that it was within its right "to attach a descriptive term like 'pack' to its mark."  [Opp.

9  6:16-18.]  Again, Plaintiff does not offer supporting evidence, nor even self-serving

10  declarations, reflecting that it intended to use the word "pack" in its descriptive or

11  generic sense.  And the best evidence of Plaintiff's motivations is what the record

12  actually shows.  <u>First</u>, Plaintiff acknowledges that its purportedly new "Scat Packs"[3]

13  were not, in fact, new products at all, but instead were the same rotating assemblies

14  Plaintiff had previously sold under "Scat".  [Feb. 21, 2017 Bost Decl. (Dkt. 120-1), ¶

15  5, Ex. D (Schenasi Depo. 133:12-15, 182:6-182:22, 189:2-18, 192:24-193:7).]

16  <u>Second</u>, Plaintiff's "Scat Packs" advertisement in the July 2015 issue of *Performance*

17  *Racing Industry* referred to the products as "**THE REAL DEAL** '**ORIGINAL**' **SCAT**

18  **PACKS COMPLETE ROTATING ASSEMBLIES**":

19

20

21

22

23  ───────────────

24  they are equipped with genuine Scat performance rods and cranks with a bonus of the
   fabulous Scat seats." [*sic*].  [Feb. 21, 2017 Bost Decl. (Dkt. 120-1), ¶ 8, Ex. G.]  Mr.
   Lieb claims that this was "meant solely as a joke." [Lieb Decl. ¶ 14.]  The joke is lost

25  on Chrysler, but even if intended as one, the Court should remember the adage,
   "many a true word is spoken in jest."  Jennifer Speake, THE OXFORD DICTIONARY OF

26  PROVERBS, pp. 325-26 (Oxford University Press 2015).

27  [3] In an effort to support this argument, Plaintiff refers to these products as "Scat's
   packs."  [Opp. 7:22, n.4.]  But Plaintiff never advertised these products as "Scat's

28  packs," only "Scat Packs" and "Scat Pack."  Plaintiff's misstatement of the evidence
   is disingenuous and misleading.



[SUF ¶ 119.]  If "Packs" is indeed descriptive or generic, as Plaintiff now posits, its use of the phrase "complete rotating assemblies" immediately after "Packs" is redundant and superfluous.  <u>Third</u>, Plaintiff's use of the term "original" implies that it previously offered this product—or some product—under the name "Scat Pack", but it never did.  Plaintiff is reluctant to admit this.  Instead, all Plaintiff shows is that it once used "Scat Superpak" in small print in a single ad in a March 1989 issue of *Hot VWs* magazine ad, and once used "Scat Super-Pak" in small print in a single ad in a June 1987 issue of *Hot VWs* magazine.  [Lieb Decl. (Dkt. 131-11) ¶¶ 9-10, Exs. A, B; Dkt. 107, SUF ¶ 103.]  What stands out by its absence, however, is any evidence at all that Plaintiff has ever used "Scat Pack" or "Scat Packs" before it decided to misappropriate Chrysler's mark for Plaintiff's own purposes in April 2015.  As a result, the mass of evidence set forth in Chrysler's Motion and accompanying papers reflecting Plaintiff's clear efforts to commence use of "Scat Packs" in an attempt to cause confusion with Chrysler's use of "Scat Pack" remains unrebutted.

Plaintiff cannot seriously maintain that its concerted efforts to manufacture actual confusion by using and advertising "Scat Packs" and "Scat Pack" are irrelevant to the issue of actual confusion, even if no actual confusion actually resulted. Plaintiff cannot have it both ways.  It cannot simultaneously contend that, on the one hand, Chrysler's use of "Scat Pack" in the marketplace has resulted in instances of actual confusion and, on the other hand, Plaintiff's use of "Scat Packs" and "Scat Pack" in the marketplace is irrelevant to actual confusion.  This is particularly true here, where Plaintiff's "evidence" of purported actual confusion is so vague, lacking in factual detail, and premised upon assumptions and innuendo that it is impossible to know what, in fact, caused the purported confusion that Plaintiff now wants this Court to believe occurred.

Plaintiff's stunt in deciding to misappropriate Chrysler's "Scat Pack" mark in order to apply it to Plaintiff's own products within days of failing to resolve this dispute with Chrysler should invalidate nearly half of the alleged instances of actual confusion (which, as explained below and in the Motion, also are inadmissible for a variety of other reasons):

    (1)    E-mail from an **anonymous** individual, "Skateborda22@gmail.com" [Motion, pp. 23-24 (Dkt. 120)]:  This e-mail inquiry—"I was looking through yalls website and was trying to find the scat pack.  Where can I find out about that?"—was sent to Plaintiff on June 14, 2016, well after Plaintiff had begun its use of "Scat Packs" and "Scat Pack."  Plaintiff has not identified "skateborda22@gmail.com" beyond his e-mail address or indicated any intention of calling him/her as a witness at trial.  There is no evidence—nor can there be any—of what "skateborda22@gmail.com" was exposed to that led him to send this e-mail to Plaintiff (which, by its very terms, might refer to Plaintiff's new use of "Scat Packs", not Chrysler's "Scat Pack"), or even what he was thinking.  Because Plaintiff has not even been able to identify this

person, has not even spoken with him, and has no idea what was motivating him, this incident is fatally defective and might only have occurred because of Plaintiff's stunt in deciding to advertise "Scat Packs".

(2) Brian McCullough's interaction with an **anonymous** individual [Motion, pp. 20-21 (Dkt. 120)]:  In his declaration supporting Plaintiff's opposition to this Motion, Mr. McCullough describes a request he received for one of Plaintiff's decals from a man wearing a "t-shirt with a Challenger logo" who "stated that he wanted the Scat decal for his car because he owned a Scat Pack Challenger."  [Dkt. 131-14, ¶ 4.]  The interaction took place on May 14, 2016, well after Plaintiff had begun its use of "Scat Packs" and "Scat Pack".  Plaintiff has not identified this man; in fact, Mr. McCullough confirms that he "did not ask for his name or contact information."  [*Id*. ¶ 7.]  Because Plaintiff has not even been able to identify this person, has not even spoken with him, and has no idea what was motivating him, this incident also is fatally defective and might only have occurred because of Plaintiff's misappropriation of Chrysler's mark so Plaintiff could use it to advertise its own "Scat Packs".

(3) The **anonymous** Australian visitor [Motion, p. 17 (Dkt. 120)]:  Plaintiff identified in an interrogatory response an inquiry or statement purportedly made to Mr. Lieb by an anonymous, unidentified "Australian Visitor" at the March 2016 Pomona Swap Meet, well after Plaintiff began using "Scat Packs" and "Scat Pack" in advertisements.  There is no evidence of what the Australian visitor was exposed to that led him to make any statement or inquiry purportedly reflecting actual confusion, or what he might have been thinking.  Because Plaintiff has not even been able to identify this person, has not even spoken with him, and has no

idea what was motivating him, this incident is fatally defective and might only have occurred because of Plaintiff's stunt in deciding to advertise "Scat Packs".

(4) Eddie Solt [Motion, pp. 15-17 (Dkt. 120)]:  Plaintiff claims that Mr. Solt made statements reflecting confusion at his 2016 job interview, again well after Plaintiff began using "Scat Packs" and "Scat Pack" in its advertising.  Neither Plaintiff nor Chrysler were successful in contacting, much less serving, Mr. Solt to conduct his discovery deposition and Plaintiff does not supply a declaration from him.  [Feb. 21, 2017 Bost Decl. (Dkt. 120-1), ¶¶ 28-29, Exs. U, V; Maune Decl. (Dkt. 131-1) ¶¶ 10-14.]  The parties have no reasonable expectation that Mr. Solt will testify at trial in this matter so Chrysler will be unable to cross-examine him, instead leaving it to Plaintiff to try to proffer hearsay evidence.  This instance also is fatally defective and might only have occurred because of Plaintiff's misappropriation of Chrysler's mark so Plaintiff could use it to advertise its own "Scat Packs".

## IV. PLAINTIFF'S EVIDENCE OF PURPORTED ACTUAL CONFUSION IS *DE MINIMIS* AND, THUS, NOT PROBATIVE OF A LIKELIHOOD OF CONFUSION OR ADMISSIBLE.

*De minimis* evidence of actual confusion is, effectively, no evidence of actual confusion.  That is the essence of the concept of *de minimis* as applied across law in general.  *See* BLACK'S LAW DICTIONARY, p. 388 (5th Ed. 1979) (definition of "de minimis non curat lex":  "[t]he law does not care for, or take of notice of, very small or trifling matters.  The law does not concern itself about trifles.").

Courts in the Ninth Circuit and elsewhere consistently hold that actual confusion evidence shown to be *de minimis* is irrelevant and immaterial.  It is incapable of raising an issue of genuine fact as to likelihood of confusion because it cannot be probative of likelihood of confusion.  If such *de minimis* evidence is

-9-

insufficient to establish confusion, _even where a court is drawing all inferences in favor of the party offering it_, it should not be presented to the factfinder at trial.[4]  _See_:

- _Mattel, Inc. v. MCA Records, Inc._, 28 F. Supp. 2d 1120, 1149 (C.D. Cal. 1998), aff'd, 296 F.3d 894 (9th Cir. 2002), _citing Universal Money Centers, Inc. v. American Telephone & Telegraph Co._, 22 F.3d 1527, 1535 (10th Cir. 1994) ("De minimis evidence of actual confusion does not establish the existence of a genuine issue of material fact regarding likelihood of confusion . . . ."; 29 unsolicited emails and "at least" 10 oral inquiries deemed _de minimis_).

- _Nora Beverages Inc. v. Perrier Group of America Inc._, 269 F.3d 114, 124 (2d Cir. 2001) ("Even if we were to find that the court abused its discretion in holding the testimony inadmissible under the hearsay rule, we do not believe that the district court erred in finding that two anecdotes of confusion over the entire course of competition constituted _de minimis_ evidence insufficient to raise triable issues").

- _Duluth News-Tribune v. Mesabi Publishing Co._, 84 F.3d 1093, 1098 (8th Cir. 1996) (only "admissible evidence" considered at summary judgment stage; evidence of misdirected mail and phone not considered because "unreliable hearsay" and "de minimis").

- _Harvey Barnett, Inc. v. Shidler_, 338 F.3d 1125, 1135, n.16 (10th Cir. 2003) ("_[D]e minimus_ evidence of actual confusion does not establish the existence of a genuine issue of material fact regarding the likelihood of confusion in a trademark-infringement claim").

- _Medici Classics Prods. LLC v. Medici Group LLC_, 683 F. Supp. 2d 304, 312 (S.D.N.Y. 2010) ("[A]necdotal evidence can sometimes still be used to show confusion, however it must be more than _de minimis_").

---

[4] Chrysler acknowledges that one of the cases it cited in support of this proposition in its opening brief—_Visa Int'l Serv. Ass'n v. E. Fin. Fed. Credit Union_, 1992 U.S. App. LEXIS 14965 (9th Cir. June 19, 1992)—is a non-precedential opinion issued by the Ninth Circuit issued before January 1, 2007 and, thus, in contravention of Ninth Circuit Rule 36-3(c).  It apologizes to the Court for this oversight.

- ▪ *U.S. Conf. of Catholic Bishops v. Media Research Ctr.*, 432 F. Supp. 2d 616, 626 (E.D. Va. 2006) ("*De minimus*, theoretical, or anecdotal instances of alleged confusion cannot create a genuine issue of material fact to withstand summary judgment").

- ▪ *Glow Indus. v. Lopez*, 252 F. Supp. 2d 962, 999 (C.D. Cal. 2002) ("'*De minimus* evidence of actual confusion' does not establish a likelihood of consumer confusion . . . ."), quoting *Platinum Home Mortgage Corp. v. Platinum Fin. Group, Inc.*, 149 F.3d 722, 729 (7th Cir. 1998).

Plaintiff cites to *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1151 (9th Cir. 2002), in support of its proposition that "if evidence is 'de minimis,' it simply means that a 'reasonable juror could find' that evidence to be 'unpersuasive.'" Plaintiff misplaces where the word "could" is used in the relevant language from *Entrepreneur Media* and, thereby, misrepresents the Ninth Circuit's opinion.  Instead, the Court held that, on *plaintiff's* motion for summary judgment, "a reasonable juror could find *de minimis*, and thus unpersuasive, one instance of actual confusion." *Id.* In other words, if evidence is *de minimis*, it is—by definition—"unpersuasive".

The relevance and admissibility of actual confusion evidence, and whether it is *de minimis*, must be analyzed in conjunction with the parties' volume of business and advertising.  *See*:

- ▪ *Nutri/System Inc. v. Con-Stan Industries Inc.*, 809 F.2d 601, 606-07 (9th Cir. 1987) (upholding trial court "determin[ation] that, in light of both parties' high volume of business, the misdirection of several letters and checks proved insignificant").

- ▪ *Inc. Pub. Corp. v. Manhattan Magazine Inc.*, 616 F. Supp. 370, 386 (S.D.N.Y. 1985), aff'd, 788 F.2d 3 (2d Cir. 1986) ("Given significant volume of sales, isolated instances of actual confusion may be disregarded as de minimis").

- ▪ *Petro Stopping Ctrs., L.P. v. James River Petroleum*, Inc., 130 F.3d 88, 95 (4th Cir. 1997) (where plaintiff submitted evidence "showing it is a significant

commercial actor in the truck stop industry," evidence of limited instances of actual confusion was "at best de minimis" and "[a]t worst, . . . create[d] a presumption against likelihood of confusion in the future) (internal quotations omitted).

Here, there is no dispute about the parties' respective significant sales and marketing efforts related to the goods offered under their respective marks.  Since 2013, Chrysler has sold over 18,000 "Scat Pack" Dodge Challengers and Chargers and over 600 "Scat Pack" kits, Chrysler has issued numerous press releases (and posted many videos) referring to the "Scat Pack", hundreds of unsolicited press reports have been written about the new "Scat Pack" products, and the "Scat Pack" has been the subject of nationwide advertising.  [Dkt. 107, SUF ¶¶ 46-53, 60.]  In support of the strength of its brand, Plaintiff has alleged more than $300 million in gross sales and that it has spent more than $14 million in advertising since 2000.  [Dkt. 134-72, ¶ 14.]  In this light, Plaintiff's alleged evidence of actual confusion—topping out at 11 alleged instances over 50 years—is clearly *de minimis*.[5]  *See Stonefire Grill, Inc. v. FGF Brands, Inc.*, 987 F. Supp. 2d 1023, 1053-54 (C.D. Cal. 2013) ("Given that the two marks have existed in the market together for over two years and [defendant's product] is available in 22,000 stores, [eight instances] of anecdotal confusion are insufficient to support a finding of confusion"); *Alchemy II Inc. v. Yes! Entertainment Corp.*, 844 F. Supp. 560, 570, n.12 (C.D. Cal. 1994) ("even if the Court were to consider it, the evidence does not demonstrate significant actual confusion.  First, fifteen phone calls inquiring about a product during the Christmas season is *de minimis*, and in fact to be expected"; granting defendant's motion for summary judgment).

---

[5] Former Plaintiff employee Jerid Suchy only testified regarding one alleged instance of actual confusion despite the fact that he was a sales representative for Plaintiff to "hundreds" of customers, and the "major component" of his job was communicating with customers and end-users of Plaintiff's products.  [Feb. 21, 2017 Bost Decl. (Dkt. 120-1), ¶ 14, Ex. M (Suchy Depo. 20:15-19, 104:18-21, 105:1-11, 108:1-15).]

Although Plaintiff has pointed to other cases where courts have ruled fewer instances of actual confusion than the eleven presently at issue to be probative of actual confusion, those cases are factually distinguishable:

- In *Pebble Beach Co. v. Tour 18 I, Ltd.*, 942 F. Supp. 1513, 1547-48 (S.D. Tex. 1996), plaintiff presented at trial the testimony of four witnesses *who themselves were confused*, as opposed to the case at bar, where Plaintiff's *only* witness who is testifying as to his or her own confusion is Lauren Maiman (whose testimony is inadmissible and not probative of a likelihood of confusion for reasons set forth below and in the Motion). Also, the opinion does not reflect any argument by the defendant that, under the circumstances of the parties' respective uses of their marks, those four instances of actual confusion were *de minimis*.

- Likewise, in *Entrepreneur*, 279 F.3d at 1150-51, of the six alleged instances of actual confusion, four consisted of direct testimony from individuals *who themselves were confused*. Also, the opinion is devoid of details reflecting the respective size of the businesses, their advertising efforts, and other facts relevant to making a *de minimis* determination.

- In *La. World Exposition v. Logue*, 746 F.2d 1033, 1041 (5th Cir. 1984), the Fifth Circuit affirmed the district court's finding of likelihood of confusion between similar marks used on the parties' "inexpensive souvenirs sold at small shops to tourists," which neither "party advertised," and where defendant "admitted . . . that his intent was to earn income by identifying his products . . . with Plaintiff," a fact that the Fifth Circuit noted "alone may be sufficient to justify the inference that there is confusing similarity." In that context, the district court found that *direct* "testimony from a man who *bought* one of the Defendants' T-shirts thinking it was made by Plaintiff" to be "credible evidence of the actual confusion of a purchaser." *Id.* (emphasis added). The Fifth Circuit affirmed without comment other than to note that, given that

"[t]he trial judge is best able to judge the credibility of a witness at trial," it was "reluctant to disturb [the actual confusion] finding on appeal."[6]  In the case at bar, Plaintiff has not presented testimony from anyone who bought anything, or even tried to buy anything, based on any purported confusion, and, as noted above, has only one witness who is testifying to his/her own purported confusion.

▪ In *Covertech Fabricating, Inc. v. TVM Building Products, Inc.*, 124 F. Supp. 3d 489, 535 (W.D. Pa. 2015), the court found 2 instances of actual confusion caused by defendant's unauthorized use of one of plaintiff's marks at issue to be probative of likelihood of confusion.  But this must be understood within the larger context of the dispute, where defendant, plaintiff's former exclusive distributor, was unlawfully using a number of plaintiff's marks on private label goods provided to defendant by plaintiff, resulting in significant amounts of actual confusion.  *Id*. at 501-07.

Finally, Chrysler does not argue—as Plaintiff claims—that Plaintiff's failure to conduct a survey should, as a matter of law, bar Plaintiff from presenting evidence of actual confusion.  Instead, Chrysler's position is Plaintiff's failure to conduct a survey is a tacit admission—as has been found by other courts in the Ninth Circuit—that the results of such a survey would have been unfavorable to Plaintiff.  *See Cairns v.*

---

[6]  The Fifth Circuit gave "substantial weight" to evidence of "the confusion of actual customers of the business."  *Safeway Stores, Inc. v. Safeway Ins. Co.*, 657 F. Supp. 1307, 1316 n.1 (M.D. La. 1985), citing *Sun Banks of Fla. v. Sun Fed. Savings & Loan Ass'n*, 651 F.2d 311, 319 (5th Cir. 1981).  Indeed, in *Sun Banks*, the Fifth Court found that approximately fifteen "incidents of confusion" in three years—instances, like those identified by Plaintiff, that did not involve "a potential consumer considering to transact business with one or the other of the parties"—were insufficient to support a finding of likelihood of confusion.  *Sun Banks*, 651 F.2d at 319.  Moreover, in cases with facts similar to those here, the Fifth Circuit has repeatedly found dozens of instances of alleged actual confusion to be *de minimis*.  *See Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252 (5th Cir. 1980) (instances of actual confusion "minimal" in "view of the fact that both plaintiff's and defendant's sales currently run into the millions of dollars each year"); *Soc'y of Fin. Examiners v. Nat'l Ass'n of Certified Fraud Examiners, Inc.*, 41 F.3d 223, 228 (5th Cir. Tex. 1995) (plaintiff's "inability to produce an actual instance of confusion, or at most twelve examples over a five year period, refutes the likelihood of confusion").

*Franklin Mint Co.*, 24 F. Supp. 2d 1013, 1041-42 (C.D. Cal. 1998) "[A] plaintiff's failure to conduct a consumer survey, assuming it has the financial resources to do so, may lead to an inference that the results of such a survey would be unfavorable"); *Playboy Enters. v. Netscape Commc'ns. Corp.*, 55 F. Supp. 2d 1070, 1084 (C.D. Cal. 1999) (failure to provide a confusion survey "warrants a presumption that the results would have been unfavorable"); *Monster, Inc. v. Dolby Labs. Licensing Corp.*, 920 F. Supp. 2d 1066, 1072 (N.D. Cal. 2013) ("a trier of fact may be entitled to presume that one party's failure to conduct a survey concedes that the survey evidence would be unfavorable to it."). In other words, the Court should presume that if Plaintiff conducted a survey, it would only have confirmed the *de minimis* nature of the alleged 11 instances of actual confusion at issue here.[7]

## V.    NONE OF PLAINTIFF'S ANECDOTAL STORIES OF ACTUAL CONFUSION IS ADMISSIBLE OR ACTUALLY REFLECTS TRUE CONFUSION.

In light of space limitations, Chrysler opts not to respond tit-for-tat to each argument Plaintiff has made regarding each of the 11 alleged instances of actual confusion. Plaintiff has not sufficiently rebutted the infirmities in Plaintiff's evidence as set forth in the Motion, and Chrysler need not tax the Court's resources more than it and Plaintiff already have. Instead, Chrysler responds to Plaintiff's incorrect contentions that: (a) none of its actual confusion evidence constitutes inadmissible hearsay (and, relatedly, the role of the credibility and bias of Plaintiff's witnesses in making this determination); and (b) alleged instances of actual confusion not tied or related to a purchasing confusion could still be probative of a likelihood of confusion.

---

[7] Plaintiff cannot claim that its "attempt[] to litigate this case conservatively" is a justification for not conducting a survey. [Opp. p. 9, n.8.] It has not made of record any evidence to support this bald statement, which is contradicted by the counsel—a renowned, international law firm—it has selected to represent it, its staffing of two Orrick partners and five associates on this matter (as shown on this Court's docket page), and its own revenue numbers and advertising expenditures, which it has trumpeted in support of the purported strength of its brand. Tellingly, Plaintiff retained a rebuttal survey expert (Hibbard) to dispute the findings of Chrysler's survey expert (Dr. Sarah Butler), but not to conduct its own survey.

A.   **Plaintiff's Proffered Testimony Regarding Unspecified Statements From Unidentified Out-Of-Court Declarants Constitutes Inadmissible Hearsay.**

A number of Plaintiff's witnesses say they heard what sounded like confusion expressed by out-of-court declarants whom these witnesses now can neither identify nor offer any specificity about.  The witnesses cannot, for example, name the declarants, provide any detail regarding them other than—at best—vague outlines, recall the specific content of the hearsay, or why the statements were made; and they certainly cannot attest to whether the out-of-court declarants were, in fact, actually confused or whether they were fully aware of the distinction between Plaintiff's "Scat" aftermarket replacement parts and Chrysler's "Scat Pack" cars and kits.

Specifically, the hearsay testimony Plaintiff proffers (for which there is no hearsay exception) includes:

▪ Jerid Suchy's hearsay testimony regarding an **anonymous** couple that approached him at a trade show [Motion (Dkt. 120) pp. 10-13]:  Mr. Suchy cannot identify the couple, cannot remember with any precision the exact content of the conversation at issue, did not write down the conversation close to or contemporaneous with when it occurred, acknowledges that the couple did not say anything specifically reflecting confusion (much less confusion relating to a purchasing decision), and admits that the couple might simply have been stating that use of the term "scat" in "Scat Pack" calls to mind the word "Scat" as used by Plaintiff.  And, as shown by the authorities set forth in Chrysler's moving papers, even that is all that happened, merely calling someone to mind does not constitute actual confusion.

▪ Tom Lieb's hearsay testimony regarding the **anonymous** "Australian Visitor" [Motion (Dkt. 120) p. 17]:  Mr. Lieb cannot identify the name of the Australian visitor and has not otherwise provided any other detail regarding the Australian visitor or his conversation with him.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

▪ Paul Bosserman's hearsay testimony regarding **anonymous** Tinder date "Jennifer" [Motion (Dkt. 120) pp. 17-20]: Mr. Bosserman cannot identify the name of, or give any other details regarding, the woman with whom he went on a Tinder date other than her name was "Jennifer".[8] Mr. Bosserman acknowledged that he never wrote down the conversation with "Jennifer" and could not remember exactly what was said due to the lapse in time between the conversation and his testimony. [Supplemental Declaration of Paul A. Bost, submitted herewith ("**Supp. Bost Decl.**"), ¶ 2, Ex. 1; Bosserman Tr., 72:25-74:3).] Mr. Bosserman admitted that "Jennifer" would be in the best position to testify as to whether she was actually confused and the nature of her confusion.

▪ Mr. Bosserman's hearsay testimony regarding the **anonymous** individuals working at "Mike's Tint Shop" [Motion (Dkt. 120) pp. 19-20]: Mr. Bosserman cannot identify the names of the individuals who worked at "Mike's Tint Shop." Mr. Bosserman admits that he does not know "anything about the two individuals that [he] had this conversation with," and that he never wrote down the contents of the conversation. [Supp. Bost Decl., ¶ 2, Ex. 1; Bosserman Tr., 82:7-15, 83:3-5).] Mr. Bosserman admits that these unnamed, unidentified individuals would be in the best position to testify as to whether they were confused and the nature of their confusion, if any.

▪ Mr. McCullough's hearsay testimony regarding the **anonymous** visitor to the 2016 Edelbrock Show [Motion (Dkt. 120) pp. 20-21]: Mr. McCullough cannot

---

[8] Plaintiff claims that "Jennifer's" confusion constitutes "textbook reverse confusion". [Opp. 19:15.] It is unclear how Plaintiff arrives at this conclusion, as Mr. Bosserman's testimony is not remotely clear as to whether "Jennifer" believes that Plaintiff made the "Scat Pack" kit installed in her Challenger (forward confusion) or Plaintiff's products are made or authorized by Chrysler (reverse confusion). The fact that "Jennifer's" confusion cannot be clearly identified as forward or reverse is indicative of its abject unreliability. (This is, of course, leaving aside the other problems with Mr. Bosserman's testimony, not the least of which is the fact that "Jennifer's" confusion is premised upon a false understanding that Plaintiff makes cars.)

identify the name of, or give any other details regarding, the visitor, other than he was wearing a "T-Shirt with Challenger logo." [McCullough Decl., ¶ 4.]

▪ Plaintiff's hearsay testimony about an e-mail from the **anonymous** "skateborda22@gmail.com" [Motion (Dkt. 120) pp. 23-25]: Plaintiff has not identified—and cannot identify—any details about this e-mailer other than his e-mail address, and cannot offer any explanation as to the basis for his alleged confusion .

▪ Plaintiff's hearsay testimony about an **anonymous** comment on the Chrysler blog post [Motion (Dkt. 120) p. 25]: Plaintiff has not identified—and cannot identify—any details about this poster other than he posted under the name "Dustin Anderson", and cannot offer any explanation as to the basis for his alleged confusion.

▪ Tom Lieb's hearsay testimony regarding Bill Middaugh's alleged confusion [Motion (Dkt. 120) pp. 13-15]: Mr. Lieb provided hearsay testimony that Mr. Middaugh made his statements reflecting alleged confusion at the **2013** SEMA tradeshow, but in Plaintiff's interrogatory responses, verified by Mr. Lieb, Plaintiff stated that Mr. Middaugh made the statements at issue at the **2015** tradeshow. [Feb. 21, 2017 Bost Decl. (Dkt. 120-1), ¶ 4, Ex. C (Lieb Depo. 242:16-244:4).] Also, Plaintiff produced an e-mail from one of its sales and marketing employees, Matthew Hajimomen, to Mr. Schenasi, dated April **23**, **2014**, purporting to memorialize a conversation he had with Mr. Middaugh **two days later**—April **25**, 2014—regarding his purported confusion. [*Id.*, ¶ 25, Ex. S.] The e-mail gives gratuitous biographical details about Mr. Middaugh and summarily concludes (likely for an eventual jury's clear consideration) that Mr. Middaugh was clearly confused. [*Id.*] *The very next day*, April **24**, 2014 (but still a day before Mr. Hajimomen had his future conversation with Mr. Middaugh), Mr. Middaugh e-mailed Mr. Schenasi with the singular greeting, "Craig," and the singular sentence, "What is the SCAT MOPAR PACK Kit."

1    [*Id.*, ¶ 26, Ex. T.]  Because the story about what Mr. Middaugh did and did not

2    do and when he did and did not do it is so muddled as to be incomprehensible,

3    Mr. Lieb's hearsay testimony is unable to make this anecdote admissible.

4        It is true that courts may, as Plaintiff contends, allow evidence of actual

5    confusion under the state-of-mind exception to the hearsay rule.  But in the cases

6    Plaintiff cites, the testimony was admissible as to the "then-existing state of mind" of

7    out-of-court declarants because the testifying witness could offer *specificity* as to the

8    identities of the out-of-court declarants, the content of their statements, or their

9    reasons for making them.  *See Lahoti v. Vericheck, Inc.*, 708 F. Supp. 2d 1150, 1159

10   (W.D. Wash. 2010) (witness specified "two to three calls per day from Vericheck

11   resellers" who conveyed confusion specifically when they visited the website

12   www.vericheck.com owned by Mr. Lahoti, an "adjudicated cybersquatter who has

13   registered thousands of domain names"); *Conversive, Inc. v. Conversagent, Inc.*, 433

14   F. Supp. 2d 1079, 1087 (C.D. Cal. 2006) (plaintiff's witnesses identified out-of-court

15   declarants by name, specifying the content of out-of-court declarants' statements, and

16   demonstrating the reasons this evidenced actual confusion).

17       By contrast, here, Plaintiff's witnesses (other than the incident concerning Mr.

18   Middaugh) *offer no identification of, or other identifying detail regarding, the out-of-*

19   *court declarants, instead offering only vague summaries, at best, of the statements*

20   *allegedly made and offering no evidence as to why such statements were made, what*

21   *the person might have been thinking, or how he or she exhibited actual confusion.*

22   And in the case of Mr. Middaugh's purported confusion, discussed above, there

23   appears to be a conspiracy between Plaintiff and Mr. Middaugh, who now is no

24   longer able to testify due to illness, to create confusion.  Under these circumstances,

25   courts in the Ninth Circuit commonly rule that the testimony constitutes inadmissible

26   hearsay.  *See*:

27   ▪   *Matrix Motor Co., Inc. v. Toyota Jidosha Kabushiki Kaisha*, 290 F. Supp. 2d

28       1083, 1093-94 (C.D. Cal. 2003) (holding that because plaintiff's "CEO could

-19-

not provide . . . [the] names of people who were allegedly confused, the dates of any inquiries, the nature of the alleged confusion, or any documentary evidence supporting [plaintiff's] allegations . . . [plaintiff] cannot substantiate its claims of actual confusion, which the Court finds to be unreliable and nothing more than inadmissible hearsay").

- *Avery Dennison Corp. v. Acco Brands, Inc.*, 1999 WL 33117262, at *18 (C.D. Cal. Oct. 12, 1999) (testimony of actual confusion incidents lacked identification of the people allegedly confused, and in one instance where the person allegedly confused was identified, no reason was given for his confusion).

- *Alchemy II*, 844 F. Supp. at 570, n.12 (15 phone calls of unidentified consumers held to be inadmissible hearsay).

- *Filipino Yellow Pages, Inc. v. Asian J. Publ'ns, Inc.*, 198 F.3d 1143, 1152 (9th Cir. 1999) (affirming district court's decision to exclude testimony that confused consumers had contacted the plaintiff because plaintiff could not identify any of the declarants).

- *Jamdat Mobile, Inc. v. Jamster Int'l Sarl Ltd., Inc.*, 2005 WL 5960925, at *1 (C.D. Cal. Oct. 28, 2005) (granting defendant's motion *in limine* to exclude plaintiff's actual confusion evidence unless plaintiff could show, *inter alia*, that actual-confusion reports "include[d] or objectively describe[d] the specific request or statements made by the consumer, and [wa]s not just a conclusion that the consumer was 'confused'").

- *Icon Enterprises Int'l, Inc. v. Am. Prod. Co.*, 2004 WL 5644805, at *15 (C.D. Cal. Oct. 7, 2004) (although "proposed testimony . . . may be evidence of actual consumer confusion, [the witness] provides no specifics or context.  Rather, he simply says that some customers asked him if the same company put out Icon Wheels and Icon–TV.  Without more, [the] testimony regarding the customers' questions is inadmissible.").

Finally, Mr. Suchy's, Mr. Bosserman's, and Mr. McCullough's—not to mention Mr. Lieb's—testimony is all-the-more unreliable given their close affiliation, past or present, with Plaintiff.  Numerous courts have disregarded actual confusion allegedly experienced by "family and friends".  *See*, *e.g.*, *Stonefire*, 987 F. Supp. 2d at 1054, *relying on Walter v. Mattel, Inc.*, 210 F.3d 1108, 1111 (9th Cir. 2000); *Checkpoint Sys., Inc. v. Check Point Software Techs., Inc.*, 269 F.3d 270, 298 (3d Cir. 2001) (holding that the district court "properly took into account the potential bias of [plaintiff]'s employees"); *Vitek Sys., Inc. v. Abbott Labs.*, 675 F.2d 190, 193 (8th Cir. 1982) (affirming refusal to consider testimony of plaintiff's employees and consultants as "uncorroborated testimony of . . . interested persons.").

### B.   <u>Testimony Regarding Actual Confusion Not Probative Of Purchasing Confusion Is Irrelevant.</u>

Chrysler does not deny, as Plaintiff intimates, that actual confusion must be experienced by a consumer to be probative of a likelihood of confusion.  Yes, actual confusion may be probative of a likelihood of confusion when experienced by non-consumers where that "confusion bears a relationship to the existence of confusion on the parts of consumers themselves."  *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1214 (9th Cir. 2012).  But *Rearden* does not throw open the doors such that confusion experienced by anyone and everyone is probative of a likelihood of confusion.  On the contrary, for actual confusion to be probative of a likelihood of confusion—regardless of who is experiencing the confusion—*it must be related in some fashion to a purchasing decision* as the Lanham Act does not guard against "confusion generally", but only "mistaken purchasing decisions."  *Id.*, *citing Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 677 (9th Cir. 2005).  *See also Accuride Int'l, Inc. v. Accuride Corp.*, 871 F.2d 1531, 1535, n.5 (9th Cir. 1989) ("likelihood of confusion" analysis must remain focused "upon confusion in the marketplace, as opposed to generalized public confusion").  "In the end, 'consumer confusion'

constitutes 'the *sine qua non* of trademark infringement.'"  *Rearden*, 683 F.3d at 1214, *citing Entrepreneur*, 279 F.3d at 1142.

Courts in this Circuit frequently refuse to consider actual confusion evidence that bears no impact on a purchasing decision.  *See, e.g.*:

- *Pinterest, Inc. v. Pintrips, Inc.*, 140 F. Supp. 3d 997, 1014 (N.D. Cal. 2015), *citing Instant Media, Inc. v. Microsoft Corp.*, 2007 WL 2318948, at *14 (N.D. Cal. Aug. 13, 2007) ("Relevant confusion is that which affects purchasing decisions, not confusion generally"; finding purported evidence of actual confusion irrelevant on this ground).

- *Nordstrom Inc. v. NoMoreRack Retail Group Inc.*, 2013 WL 1196948, at *6 (W.D. Wash. March 25, 2013) ("The Court agrees that the isolated instances of confusion, particularly those cloaked by anonymity on the Internet, do not rise to the level of actual confusion on a purchasing decision").

- *Nordstrom, Inc. v. 7525419 Canada Inc.*, 2012 WL 12507605, at *10 (W.D. Wash. Dec. 27, 2012), *quoting Sunenblick v. Harrell*, 895 F. Supp. 616, 631 (S.D.N.Y. 1995) (refusing to consider alleged evidence of actual confusion that "do[es] not manifest confusion affecting a purchasing decision . . . '[T]he relevant confusion to be avoided is that which affects purchasing decisions, and not confusion generally.'").

Certain of Plaintiff's purported evidence of actual confusion is unambiguously not probative of a likelihood of confusion because the confusion is not probative of any potential purchasing confusion:

- Lauren Maiman's alleged confusion [Motion (Dkt. 120), pp. 22-23]:  Lauren Maiman is an advertising professional with clients in a variety of fields.  She admits that she is not a customer or potential customer of the parties' products. [Feb. 21, 2017 Bost Decl. (Dkt. 120-1), ¶ 16, Ex. O (Maiman Depo. 10:9-24, 52:13-53:11, 55:7-56:3).]  Accordingly, any purported confusion exhibited by her, "a non-sophisticated non-consumer . . . . shed[s] little light or no light on

whether a sophisticated consumer would likewise be confused."[9]  *See Rearden*, 683 F.3d at 1216.

- ▪ Mr. Bosserman's testimony regarding the **anonymous** individuals working at "Mike's Tint Shop" [Motion (Dkt. 120), pp. 19-20]:  Plaintiff baldly claims that individuals at Mike's Tint Shop—who Bosserman admits he knows nothing about—are "industry professionals who work on cars for a living.  If they suffer confusion in the automotive marketplace, the average consumer is likely to as well."  [Opp. 19:24-20:1.]  Plaintiff submits no evidence showing that these particular individuals are "industry professionals" merely by virtue of the fact that they work in some unidentified role at a window tinting shop, much less that any confusion they exhibited—in a situation entirely divorced from a purchasing situation—is somehow indicative of likely purchaser confusion.

Just as these two instances come nowhere close to being probative of whether the person allegedly confused is related in some fashion to a purchasing decision (*see Rearden LLC*, 683 F.3d at 1214), the balance of Plaintiff's alleged instances of actual confusion likewise are not probative of purchaser confusion.  Plaintiff's presentations of stories about them, uncoupled from information such as their identities, their motivations, whether they had been or were likely to be purchasers, or even what they were thinking, are just too indefinite, vague, and unreliable for any trier of fact to make any reasonable assessment as to whether the alleged confusion is probative of any purchaser confusion, and thus should be excluded.

///

///

_____

[9] Plaintiff claims that Ms. Maiman testified that she mentioned her alleged confusion to her client, Jon Kunzman, who had to contact Plaintiff's CFO to determine if there was any relationship between Plaintiff and Chrysler.  [Opp. 22:4-11.]  Ms. Maiman's testimony as to her conversation with Mr. Kunzman is incomprehensible and vague. [Feb. 21, 2017 Bost Decl. (Dkt. 120-1), ¶ 16, Ex. O (Maiman Depo. 17:5-9).] Moreover, any testimony by Ms. Maiman as to Mr. Kunzman's beliefs or statements lacks foundation and constitutes inadmissible hearsay, respectively.

## VI.   **CONCLUSION.**

For all of the foregoing reasons, Chrysler respectfully requests that the Court exclude these eleven instances of purported confusion.

Dated:  March 20. 2017          SHEPPARD MULLIN RICHTER & HAMPTON LLP

By _____/s/ Kent R. Raygor_____

KENT R. RAYGOR

Attorneys for Defendant/Counterclaimant
FCA US LLC (formerly "Chrysler Group LLC")

481839390.3

-24-